OSBORN PAPER COMPANY, a Corporation, Appellant, v. CARROLD OSBORN PAPER COMPANY, INC., a Corporation, Respondent, No. 41926—234 S. W. (2d) 614.

Division Two, December 11, 1950.

358

*Richard K. McPherson* and *Ralph Baird* for appellant.

*Stewart E. Tatum* and *Roy Coyne* for respondent.

[615]   WESTHUES, C.—Plaintiff, a corporation, seeks by this suit to restrain the defendant, a corporation, from using the name "Osborn" on the theory that by its use the defendant is guilty of unfair competition..

The case was filed in the Circuit Court of Jasper County, Missouri, where plaintiff's petition was dismissed on motion of the defendant on the ground that no cause of action was stated. Plaintiff appealed to the Springfield Court of Appeals. The judgment of the trial sourt was affirmed in an opinion written by Judge Blair and concurred in by Judge McDowell. Judge Vandeventer dissented. The case is reported in 226 S. W. (2d) 408. The court of appeals transferred the case to this court. The petition of plaintiff is set forth in full in the majority opinion of the court of appeals. It will, therefore, not be necessary to do more than state the substance of the petition. From the facts stated in the petition, we learn the following: On January 2, 1907, plaintiff was incorporated under the name of "Osborn Paper Company." The paid-up capital was $80,000 and the place of its business was 1024 Byers Avenue, Joplin, Missouri. The company engaged in a general wholesale and retail business dealing in paper supplies and other merchandise. It is stated in the petition that the trade territory extended for a radius of about 70 miles; that it has built up a large and profitable business; that its products are known and referred to as "Osborn"; that the company's standing and business ability have been well established and known throughout its trade territory. It is alleged that no other concern with a similar name had been engaged in such business within the trade territory until the defendant company was incorporated; that the Osborn family organized and established the business; that in 1946, 674 shares of the 800 shares of the corporation were sold by the Osborns; that the purchasers thereof paid 6% of the book value of the stock for the good will of the company; that the plaintiff company has no interest in the defendant's company. The

petition further alleges that on January 1, 1949, the defendant company was incorporated under the name of "Carrold Osborn Paper Company, Inc."; that the defendant company has engaged in the same business as the plaintiff company and its place of business is located within 100 yards of plaintiff's place of business, the defendant's address being 929 Byers Avenue and that of the plaintiff being 1024 Byers Avenue; that the stockholders of the defendant [616] company are J. G. C. Blockwitz, Rolland O. Shadday, T. H. Strecker, Roy E. Steele, and Carrold Osborn; that Carrold Osborn is a minority stockholder. It is alleged that Carrold Osborn is a grandson of the originator of plaintiff's company and at one time was in plaintiff's employ. Allegation is made that the use by the defendant of the name "Carrold Osborn Paper Company, Inc." is confusing in the trade area of plaintiff to its customers; that the use of the name is "calculated to and will, and does, deceive or confuse the public" in the belief that the defendant company is the same as plaintiff's; that in dealing with the defendant the buying public will be under the impression they are buying from the plaintiff, all to the plaintiff's damage.

As we read the majority opinion of the court of appeals, the case was decided in favor of defendant solely on the ground that "The right of a man to use his name is almost inviolate." Note what the court said on page 412 of 226 S. W. (2d) (2)(3), where it is indicated that the defendant, if plaintiff's charges were true, was guilty of unfair competition and the court would have so decided except for the fact that Carrold Osborn was using his own name. The majority opinion further held that the petition did not charge that the defendant used the name "Osborn" for an ulterior motive and that such an allegation was necessary.

In the dissenting opinion, Judge Vandeventer held the petition stated a cause of action. Emphasis was placed on the words of the petition alleging that the use of the name "Osborn" was "calculated to and will, and does, deceive or confuse the public." It was also noted in the dissenting opinion that Carrold Osborn was not personally using his own name but that the defendant corporation of which Carrold Osborn was a minority stockholder was making use of the name "Osborn." To this we agree. However, let us meet the issue squarely and treat the question of the use of Carrold Osborn's name by the corporation on the same basis as if Carrold Osborn were using it in his own business.

We find the law to be that the right of a man to the use of his own name has its limitations. The cases cited by the plaintiff in its brief in the court of appeals were considered in the majority opinion of that court and we shall not again review them. We have sought some additional authorities to those cited in the two opinions of the court of appeals. In 52 Am. Jur. 608, Sec. 133,

it is stated that a bona fide and innocent use by an individual of his own name cannot be restrained. However, we find the following limitation on this right, 52 Am. Jur. 608, 609: "On the other hand, one may not use his own name for the express purpose of appropriating the business or good will of a competitor, or resort to any artifice or contrivance in the use of his own name for the purpose of misleading the public as to the identity of his goods or business. Furthermore, it is established that a personal or family name may, by usage, acquire a secondary or trade meaning denoting the goods or business of a particular individual, so as to entitle the user to protection against any unfair or piratical use thereof by another, and that where a family name has been adopted and become established as a tradename, a later user of the same or a similar name must use such means or precautions as are necessary in order to distinguish his goods or business from those of the former." See also 65 C. J. S. 23, Sec. 13; 63 C. J. 429, Sec. 118, and 391, Sec. 101. This doctrine is recognized by the Missouri courts. See Katz Drug Co. v. Katz, Mo. App., 217 S. W. (2d) 286, 1. c. 289, where the court said:

"Generally speaking, every person has the right honestly to conduct his own business under his own name, but he must use that name with due regard to the rights of another person or corporation having the same name. He cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of names. Lo Buono et al. v. V. Viviano & Bros. Macaroni Mfg. Co., 197 Mo. App. 618, 627, 198 S. W. 498; Mary [617] Muffet, Inc. v. Smelansky, Mo. App., 158 S. W. (2d) 168."

See also Silver Laundry and Towel Co. v. Silver, Mo. App., 195 S. W. 529. We find many cases where the courts have enjoined the use of a person's own name in connection with his business on the ground that the use thereof caused confusion and constituted unfair competition. In the case of Waterman v. Modern Pen Co., 235 U. S. 88, 35 S. Ct. 91, L. E. Waterman Company manufactured fountain pens known as "Waterman's." A. A. Waterman & Company was later organized and manufactured fountain pens. At the instance of L. E. Waterman Company, the defendant A. A. Waterman & Company was restrained from using the name "Waterman" except under the name of Arthur A. Waterman & Company" and then only when in juxtaposition with the suffix "not connected with the L. E. Waterman Co." displayed in equally prominent letters.

In Walter Baker & Co., Limited v. Sanders, 80 F. 889, W. H. Baker was restrained from selling his product as "Baker's Chocolate"

because it confused the public attempting to buy Baker's Chocolate manufactured by Walter Baker & Co., Limited, the name "Baker's Chocolate" having by years of usage ripened into a trade-name by which the product was well known.

So, in Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co., 107 A. L. R. 1276, 269 N. W. (Minn.) 633, it was held that a name may become so identified with a certain product that the owner will be protected in its use on the principle of unfair competition. The defendant was permitted under court order to use the name "Brown" but in such a way as to make it clear that its product was not that of the plaintiff company.

For other cases announcing a similar rule, see De Nobili Cigar Co. v. Nobile Cigar Co., 56 F. (2d) 324; A. Hollander & Son, Inc. v. Jos. Hollander, Inc., 178 A. (N. J.) 786; Schwarz v. Schwarz, 269 P. (Cal.) 755; T. A. Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904. In the latter two cases it was held that a plaintiff need not wait until an actual damage has been sustained but may obtain relief when such damage is likely to occur. In Schwarz v. Schwarz, supra, 269 P. l. c. 756(2), the court said: "Plaintiff offered one witness to testify that he had been confused over the two offices. It was not necessary to prove this. 'It. is the liability to deception which the remedy may be invoked to prevent.' T. A. Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904. This subject is fully discussed in the opinion of Judge Thompson in Sun-Maid Raisin Growers v. Mosesian, (Cal. App.) 258 P. 630, 635." This court in Thomas Patrick, Inc. v. KWK Inv. Co., 206 S. W. (2d) 359, l. c. 360(1-3), said:

"As a preliminary it should be noted that it is not a necessary prerequisite to relief in cases of this nature that some one, in point of fact, has been deceived (Liggett & Myers Tobacco Co. v. Sam Reid Tobacco Co., 104 Mo. 53, 60, 15 S. W. 843, 844, 24 Am. St. Rep. 313) or that the plaintiff, in point of fact, has sustained an actual loss of business, injury to good will or damages."

See also 63 C. J. 396, Sec. 104.

It is also well established that a firm name is an asset subject to sale and inseparable from the good will of the firm. Richter v. Richter, 173 A. L. R. 436, 43 S. E. (2d) (Ga.) 635. In the case under consideration the present stockholders paid 6% of the value of the stock to the Osborns for the good will of the company. In American Radio Stores, Inc. v. American Radio & Television Stores Corporation, 150 A. (Del.) 180, l. c. 182 (4), the court held that in a suit to restrain unfair competition complainant need not show express intent to injure trade where evidence showed harmful result in fact.

In the case before us, considering the allegations of the petition as true, we have an established business of which the

product is generally known by the name "Osborn." The defendant has adopted a name that will confuse the buying public and is "calculated to and will, and does, [618] deceive or confuse the public." That confusion will result is not difficult to believe. The two companies with similar names are engaged in the same business on the same street only 100 yards apart. We are of the opinion that the dissenting opinion correctly ruled the case. As stated in that opinion, 226 S. W. (2d) l. c. 415, the last paragraph, "It seems to me clear that the allegations of the petition are sufficient as against a motion to dismiss. What the evidence will show is another matter." This court in Thomas Patrick, Inc. v. KWK Inv. Co., supra, 206 S. W. (2d) l. c. 360(1-3), said: "The issue is one of fact and each case presents a unique problem which must be determined upon its particular facts and the weight of conflicting interests. 148 A. L. R. loc. cit. 26, 78; Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., 2 Cir., 105 F. (2d) 908, 910."

The judgment of dismissal by the circuit court is, therefore, reversed and the case remanded. for trial.

It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.