SIMPLIFIED TAX RECORDS, INC., a Corporation (Plaintiff), Respondent,

v.

Gordon A. GANTZ and Simplified Tax Records, Inc., of Missouri, a Corporation (Defendants), Appellants.

No. 30327.

St. Louis Court of Appeals.

Missouri.

March 15, 1960.

Ziercher, Tzinberg, Human & Michenfelder, Albert A. Michenfelder, Jr., Clayton, for appellants.

Gleick & Strauss, Harry S. Gleick, St. Louis, for respondent.

ANDERSON, Acting Presiding Judge.

This is an action in equity instituted by plaintiff, Simplified Tax Records, Inc., against defendants, Gordon A. Gantz and Simplified Tax Records, Inc., of Missouri. In said suit plaintiff sought an injunction against the use by defendants of the name "Simplified Tax Records," and other incidental relief. Defendants, with their answer, filed a counterclaim seeking an injunction and damages against plaintiff. The trial court found against defendants on their counterclaim and for plaintiff on its cause of action, and issued an injunction in accordance with the prayer of the petition. Defendants have appealed.

Plaintiff is a corporation organized under the laws of the State of New York. The date of its incorporation was October 11, 1937. It is engaged in the income tax service business. Its method of doing business is to sell to distributors throughout the United States a single-entry bookkeeping system which they in turn sell to businessmen in their territory. The system consists of an account book for use by the ultimate purchaser, together with tax bulletins sent out periodically to subscribers to keep them abreast of the tax laws which may affect them in their business. Also, in connection with what is referred to in the evidence as the "de luxe" system, plaintiff agrees to prepare the subscriber's Federal income tax returns each year and answer all questions regarding a customer's income tax and bookkeeeping problems. The answers to these questions are guaranteed to be correct. This guarantee appears in the book furnished subscribers and, by its terms, plaintiff agrees to pay all fines and penalties resulting from incorrect advice. Plaintiff sells the book only to its distributors, except where there is no distributor in a particular area and a person in said area writes to plaintiff and asks for the service. After the distributor has sold a book to one of his customers, plaintiff thereafter renders the service above referred to without any further charge.

Plaintiff, at the time of the hearing below had 210 distributors operating in 44 states. These distributors receive no salary from plaintiff. From the evidence, it is clear that the relation between plaintiff and the distributor is that of vender and vendee. Plaintiff's home office is in New York City. William Frankel is President of plaintiff. He is also known, and frequently referred to in the evidence, as Bill Foster. Howard S. Van Voorhies is Executive Vice-President, and his duties are, in general, to supervise the entire operation of plaintiff's business.

At the home office, plaintiff maintains a permanent staff of 30 people, which is in-

creased during the tax return season by 100 to 125. Among the permanent year-round staff are four or five tax accountants, and a legal department of tax experts. In addition, plaintiff has a contract for accounting services with a firm of certified public accountants should the occasion arise when such service is needed. Ordinary tax questions submitted by subscribers are answered, but legal opinions are not given.

Plaintiff sells two kinds of service—one known as the Standard Service, which consists only of bookkeeping records; and the other, or more expensive, termed the De-Luxe Service. The latter, as heretofore indicated, includes the furnishing of tax bulletins, access to plaintiff's tax service department, and the preparation of Federal tax returns. The tax returns are made from information supplied by the subscriber on forms furnished by plaintiff. The price to the subscriber of the books and service at the time of the trial was $20 for the Standard Service, to $99.50 for the DeLuxe Service, the charge covering two years' service. The cost to the distributor was approximately 40% of the cost to the subscriber. Plaintiff, at the time of the trial, had 100,000 accounts and, since its organization in 1937, has sold over 300,000 tax systems in the United States.

Plaintiff at all times sold its books outright to its various distributors. It maintained no stock of merchandise in Missouri, and had no office for the transactions of business in this state. All of plaintiff's transactions and contacts with distributors and subscribers were by mail. Plaintiff had and exercised no control over any of defendants' employees, and did not hire or discharge any of them. Plaintiff paid no salaries to anyone in Missouri. The conclusion is inescapable that plaintiff had no agent for the transaction of its business in the State of Missouri.

The evidence further shows that upon the expiration of the original two-year pe-riod of the system's use by a subscriber, if there was no agent in the area, the subscriber was solicited for a renewal directly by mail from the home office in New York. If there was no response, a second or third letter was sent in an effort to secure a renewal.

Plaintiff's testimony was that if an individual distributor should establish his own independent bookkeeping service plaintiff would cancel the distributor's franchise, because, in the first place, plaintiff does not believe its distributors qualified to render that service and, secondly, because in so doing the distributor is placed in competition with plaintiff. This was explained to defendant Gantz by Mr. Van Voorhies in 1949.

Defendant Gantz' first contact with plaintiff's service was in 1946 or 1947. At that time, Harold Blackwell held a franchise as a distributor for plaintiff in Missouri and several other states. Gantz met Blackwell at that time in response to an advertisement which the latter had run in the newspapers in St. Louis. An arrangement was then worked out between Blackwell and Gantz whereby the latter undertook to sell plaintiff's products in Missouri. He was given exclusive rights in Missouri. This relationship continued until 1950, when it was terminated due to a disagreement between Gantz and Blackwell. In April, 1950, there was a meeting in St. Louis at the Statler Hotel between William Frankel and Gantz. Mr. Gantz testified that the only persons present at that meeting, other than himself, were William Frankel and Blackwell. Van Voorhies testified that he was also present at this meeting. At said meeting it was arranged that Gantz would act as distributor for plaintiff in Missouri.

There is some conflict in the testimony as to what transpired at this meeting. Gantz testified:

"Now, then he (Frankel) said 'Well now, Mr. Gantz, we won't interfere with you in any way down here if you want to take over the state or we'll

take over the state and sell these books down here.' And I said, 'Well Mr. Frankel, Mr. Blackwell has had this state and you are cutting him off as of today, that's what you are telling me you are going to do. Now, if we are going to handle the State of Missouri and build up an organization, we are not going to do it on a temporary basis, we are going to have an organization, we are going to have a corporation and it is going to be our corporation and not yours. We'll call it Gantz Sales Company or we'll call it Jumbo Tax or anything, but we are not going to be tied up so when you want to discontinue selling books that it will wreck our business.'

*   *   *   *   *

"Mr. Frankel said, 'Well that's entirely satisfactory but we'd prefer that you incorporate in the name of Simplified Tax Records.' * * * Mr. Frankel said that he would prefer that we use and incorporate under the name of Simplified Tax Records, preferably of Missouri.

*   *   *   *   *

"Q. Was Mr. Van Voorhies present at that meeting? A. He was not."

Van Voorhies testified he was at the above mentioned meeting and that no mention was made of the proposed incorporation. He stated: "I don't remember him ever discussing such a matter with me. I am sure he didn't."

After this meeting, Louis H. Frankel, plaintiff's general counsel, wrote Gantz the following letter dated April 26, 1950: "I was glad to get your letter but in the meantime I know you saw Bill Foster and met with Harold Blackwell and ironed out everything to your complete mutual satisfaction."

Gantz testified he had in mind the formation of a corporation as early as 1950, and that some preliminary work on that project was done at that time. He further testified that he discussed the matter of incorporation with Van Voorhies the night of the Veiled Prophet's Parade in the fall of 1952. He stated that:

"I mentioned that we had not made the incorporation, but were contemplating going ahead with the plans we had discussed with Mr. Frankel, and he (Van Voorhies) said, 'Well, whatever Bill said was O.K.' * * *

"The Court: Are you saying you told Mr. Van Voorhies at that time that you were going to incorporate and use the plaintiff's name and add to it 'of Missouri'? Is that what you are testifying?

"The Witness: That is correct."

Van Voorhies, in testifying on behalf of plaintiff, stated that at no time did he have any information that defendant was forming a corporation until about the time plaintiff terminated its relations with defendant in 1956, when an order or letter was received from defendant with the word "incorporated" on it. He further testified that: "At the time I thought it was a mistake. I didn't realize he had actually formed a corporation until we investigated it." Van Voorhies denied that there was any conversation with Gantz the night of the Veiled Prophet's Parade in 1952 concerning incorporation by Gantz. Van Voorhies testified: "No, I don't remember him ever discussing such a matter with me. I am sure he didn't. The only possible way he could have mentioned it to me would be the fact that he was going to incorporate, which I assume meant with his wife or somebody, but never use our name and go into the bookkeeping business."

The defendant Simplified Tax Records, Inc., of Missouri was incorporated under the laws of the State of Missouri on December 8, 1954. Defendant Gantz is president of said company. On December 6, 1954, Gantz wrote a letter to Van Voorhies which did not mention the formation of a corporation. There was introduced in evi-

dence plaintiff's correspondence files for the year 1954 and defendant Gantz was asked to look through the files "and see if at any time you wrote the plaintiff that you were forming or had formed a corporation." Gantz did not comply with this request, stating that to do so would require him to read every letter in the file. When asked by the Court if he had ever written such letter, Gantz replied: "I don't know." Again, when asked if, after the incorporation, he had ever written any letter stating he had formed a corporation, Gantz replied: "No, not that I know of. I might have. I might have mentioned it several times." He was then asked, "Can you produce such a letter?" His reply was: "I might be able to if I looked through all of my correspondence * * * I can't at this moment." No such letter was ever produced in evidence.

Gantz further testified that immediately after the defendant corporation was formed he had caused to be printed letterheads with the corporation's name on same. He could not recall whether he had ever used this letterhead in writing to plaintiff, but was almost positive he had. No such letter was ever brought to the attention of the Court, though plaintiff's correspondence files containing all letters written to plaintiff by Gantz were available at the trial. Van Voorhies testified that prior to October 9, 1956, he at no time saw any correspondence written on stationery with letterheads of defendant corporation thereon, although there was a large volume or correspondence between plaintiff and Gantz in 1954, 1955, and 1956. After the incorporation of defendant company Gantz continued to use the same letterheads he had previously used. This was stationery furnished by plaintiff. These letterheads had printed thereon the name "Simplified Tax Records Company." The word "Incorporated" was not included. Also, on some, were imprinted the words: "G. A. Gantz, Division Manager;" on others, "G. A. Gantz, General Manager," while still on others appeared the legend: "Gordon A. Gantz,

Distributor." Gantz said he used these letterheads because to do so was cheaper than using letterheads on which were printed the name of defendant corporation. Louis Frankel told Gantz he could use the name "Simplified Tax Records" as long as he remained plaintiff's distributor. Van Voorhies testified that the use by Gantz of the words "Simplified Tax Records", between 1954 to the date his relation with plaintiff was terminated in 1956, was with plaintiff's permission, but without its knowledge of his having incorporated under that name.

All orders sent by Gantz to plaintiff for the years 1954, 1955, and 1956 were offered and received in evidence. These orders were for books constituting the bookkeeping service, letterheads, envelopes and business cards. Every order was signed by G. A. Gantz personally and bore his home address; none of them bore the name of defendant corporation or its business address, which was 4556 Manchester Avenue. On cross-examination, Gantz testified that after the corporation was formed he still signed all orders "G. A. Gantz," and in them gave his home address. None were signed in the name "Simplified Tax Records, Inc., of Missouri."

Defendants did not produce at the trial any canceled checks issued for the payment of books bought from plaintiff during 1954, 1955 and 1956, although a subpoena duces tecum had been issued for this production. As an excuse for their nonproduction Gantz stated he could not find them. Gantz carried his account at the bank in the name of Simplified Tax Records, Inc. This was apparently with plaintiff's permission. In signing checks he added "G. A. Gantz." He did not sign as "President."

In 1954, after defendant corporation received its charter, Gantz caused to be listed in the St. Louis Telephone Directory the name "Simplified Tax Records, Inc., of Missouri." This listing has appeared in all subsequent issues of the telephone directory. It appears both in the white and yellow

pages. Like listings were inserted in telephone directories in other areas in Missouri. Gantz had "Simplified Tax Records" painted on the windows of his business office. In practically all his correspondence, when he used the word "Simplified", he wrote it in capital letters. He testified that he attached a high value to the name "Simplified Tax Records, Inc."

After Gantz took over the Missouri territory he concluded that, in order to keep the business prospering and to insure renewals, it would be necessary to develop a means of servicing the accounts of his customers. This Gantz did, rendering such service on a regular monthly, quarterly and yearly basis. This service consisted of aiding the customer in keeping his accounts, preparing his tax returns and, in general, rendering him a bookkeeping service. A charge was made for this service. This charge varied from $25 to $80 per month, depending upon the amount of work required. Gantz testified that his company had approximately 600 accounts which were serviced regularly, either monthly or quarterly; 1,500 which do not have a service contract but call on them now and then. The 600 regular customers use the account book similar to plaintiff's book sold them by defendants. Very few of the 1,500 customers use this book.

In 1952 Gantz had employed three salesmen. At the time of the hearing below defendant corporation employed fifteen persons, including defendant Gantz. The gross income of the corporation for 1957 was $65,000. This sum includes the gross income of the various salesmen. The gross income of the corporation, excluding that of the salesmen, was about $35,000 in 1957.

Mr. Van Voorhies testified that when Mr. Blackwell was their distributor in Missouri the plaintiff's business was, volume-wise, at a very low ebb. This was due to the arrogant attitude of Blackwell toward his salesmen. These salesmen would quit Blackwell and seek employment elsewhere. After Gantz took over, the business increased up to the year 1954. From 1954 on there was a decrease in the sale of plaintiff's service in Gantz' territory, especially in the sale of the de luxe systems. Defendants' bookkeeping service was in competition with the service rendered by plaintiff in connection with the sale of the de luxe system.

Plaintiff terminated its arrangement with Gantz on October 9, 1956, for the stated reasons that it had ascertained he was selling competitive systems and because he was offering subscribers bookkeeping and accounting services in competition with plaintiff.

On January 7, 1957, plaintiff sold a franchise to Ben Feld for the territory formerly covered by Gantz. At the trial, Feld testified there had been some confusion on the part of customers by reason of defendant corporation's name. He spoke of one incident where, after a sale had been made and a deposit taken, the customer canceled the order because of a telephone conversation with someone who told the customer they were being overcharged. Although the record does not state with whom the customer talked, the plain inference is that it was someone connected with defendants. Feld tried to get a listing for the name "Simplified Tax Records" in the St. Louis Telephone Directory, but was unable to do so. Because of this, plaintiff was compelled to make special concessions to Feld. Feld received 188 books, retailing for approximately $16,000, for his deposit of $9,500, instead of $9,500 worth of books.

Feld further testified that on five, six, or seven other occasions there was confusion over the dual use of the names. He stated that his customers are either solicited by mail or by telephone, "and the only way I would ever have found out if there had been a prior solicitation on the similar name is the time when the person on the other end of the phone would say they have already been solicited by the same company or that we don't know how many of the direct mail letters were torn up and thrown away be-

cause they had already been solicited by a similar name." He stated he made about "50 phone calls a week or roughly 2500 calls a year." Since the early part of March, 1957, to the date of the hearing, Feld sold 134 or 140 accounts. All the accounts sold were the de luxe type service.

Defendants' witness Nelson L. Bay purchased one of plaintiff's books in 1946 or '47 from Gantz, and is still doing business with Gantz. He stated that he always connected Gantz and Simplified Tax Forms of Missouri together. He has referred Gantz to business and professional men. Defendants' witness James A. Ray called defendants' office thinking he was calling plaintiff's office.

It is conceded that plaintiff is a foreign corporation and that it has never applied for or received a certificate of authority to transact business in Missouri.

The Court made and entered findings of fact and conclusions of law, and entered the following decree:

"1. That defendants be and they are hereby permanently enjoined from using the name 'Simplified' as part of their names, products or activities in connection with the sale of bookkeeping systems, of servicing the same, or in the making or assisting in the making of tax returns.

"2. That defendant Simplified Tax Records of Missouri, Incorporated, forthwith take proper steps to change its corporate name so as to eliminate the word 'Simplified', and that in making said change said defendant shall not make use of a word that is so similar to the word 'Simplified' as to tend to cause confusion with plaintiff's name.

"3. That defendants forthwith bring about a change in directory listings, signs, letterheads, and any other forms of giving information to members of the public, so as to eliminate the use of the word 'Simplified'.

"4. That defendants hereafter refrain from representing to the members of the public that defendants in their business activities are in any manner associated with the plaintiff; Provided, however, that defendants shall be entitled to sell or otherwise dispose of without misrepresentation any of plaintiff's products which defendants now possess.

"5. That judgment be entered in favor of the plaintiff on defendants' counterclaim.

"6. That the costs of this action be assessed against defendants, and that execution issue therefor."

Defendants, prior to trial, filed a motion to dismiss plaintiff's petition. The ground of said motion was that the action could not, under the provisions of Section 351.635 RSMo 1949, be maintained, for the reason that plaintiff, a foreign corporation doing business in Missouri, had failed to secure authority to do so under Section 351.570. (All statutory references are to RSMo 1949, V.A.M.S.) By agreement of counsel, the motion was taken with the case. Defendants also preserved this defense in their answer.

Defendants' first point on this appeal is that said motion and defense should have been sustained. Section 351.570 provides: "A foreign corporation organized for profit, before it transacts business in this state, shall procure a certificate of authority so to do from the secretary of state * *." Section 351.635 provides: "Every foreign corporation now doing business in or which may hereafter do business in this state which shall neglect or fail to comply with this chapter shall be subject to a fine of not less than one thousand dollars to be recovered before any court of competent jurisdiction; * * * in addition to which penalty, no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract

or tort, while the requirements of this chapter have not been complied with."

■ It is well settled by the decisions of this state that the foregoing statutes do not, and cannot, apply to transactions in interstate commerce. Security State Bank v. Simmons, 251 Mo. 2, 157 S.W. 585; General Excavator Co. v. Emory, Mo.App., 40 S.W.2d 490; Heinrich Chemical. Co. v. Herman, Mo.App., 251 S.W. 162; Yarbrough v. W. A. Gage & Co., 334 Mo. 1145, 70 S.W.2d 1055; Fay Fruit Co. v. McKinney Bros. & Co., 103 Mo.App. 304, 77 S.W. 160; Yerxa, Andrews & Thurston v. Randazzo Macaroni Mfg. Co., 315 Mo. 927, 288 S.W. 20; Dinuba Farmers' Union Packing Co. v. J. M. Anderson Grocer Co., 193 Mo.App. 236, 182 S.W. 1036; Corn Products Mfg. Co. v. Western Candy & Bakers' Supply Co., 156 Mo.App. 110, 135 S.W. 985; Rogers v. Union Iron & Foundry Co., 167 Mo.App. 228, 150 S.W. 100; Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, 232 Mo. App. 791, 113 S.W.2d 155; J. R. Watkins Medical Co. v. Holloway, 182 Mo.App. 140, 168 S.W. 290. With this rule in mind, we have considered the facts uncovered at the trial below and have reached the conclusion that plaintiff in its business dealings with defendants and others in this state was at all times engaged in interstate commerce and, therefore, not subject to the provisions of Sections 351.570 and 351.635, supra.

Defendants, in their answer, set up the following plea of estoppel:

"That these defendants have been using the name 'Simplified Tax Records Incorporated of Missouri' with the knowledge and consent of plaintiff as an independent contractor, selling books purchased from plaintiff, but rendering a bookkeeping service as their primary business, and plaintiff is now estopped to attempt to deny to defendants the right to use said name."

The trial court, as a basis for a denial of this plea, found that defendant Gantz brought about the incorporation of defendant Simplified Tax Records, Inc., of Missouri, without plaintiff's knowledge. Defendants complain of this finding, contending that said finding is contrary to the evidence. In support of their contention, defendants refer to the testimony of Gantz wherein he stated that at the meeting held in St. Louis on April 6, 1950, William Frankel, plaintiff's president, told Gantz that it was perfectly all right for him to incorporate his business preferably under the name "Simplified Tax Records of Missouri." Defendants admit that this testimony was contradicted by Van Voorhies, who claimed to be present at the meeting, but contend that this testimony was destroyed by the letter written by Lou Frankel, which we have heretofore set out, which letter does not mention the presence of Van Voorhies at said meeting. Gantz also, in a deposition read at the trial, testified that in 1952 and 1953, shortly before his company was organized, he told Van Voorhies he was going to organize a corporation and, when the latter asked him what name he was going to use, replied: "probably Simplified, I think that's as good as any." He stated that Van Voorhies replied: "All right, fine. Hope you make a go of it. * * * All we want to do is to sell more books, so anything you do is satisfactory to us." Gantz also testified, as we have heretofore indicated, that he told Van Voorhies the night of the Veiled Prophet's Parade in 1952, that he was going to incorporate under the name Simplified Tax Records of Missouri. All this testimony was contradicted by Van Voorhies, who testified that at no time did he have any information that defendant was forming a corporation until about the time plaintiff terminated its relations with Gantz in 1956. Gantz also testified in his deposition: "I think I told Lou Frankel when he was down here, * * * I said, we thought —it seems to me—I said, 'I think we will use Simplified Tax Records,' and he said, 'Fine, that's a good name.'" Lou Frankel testified that he had two meetings with Gantz, and that he did not at either of

those meetings discuss with Gantz the use of the name "Simplified Tax Records" or "Simplified Tax Records, Inc., of Missouri."

Plaintiff introduced in evidence all orders sent by Gantz to plaintiff in the years 1954, 1955 and 1956. Gantz had signed all these orders personally. In writing to plaintiff, Gantz never used letterheads of defendant corporation. No letter was ever produced in which he advised plaintiff that he intended to form or had formed a corporation. Although served with a subpoena duces tecum to bring into court his canceled checks showing payment to plaintiff, he did not produce them. These circumstances tend to show a studied attempt on the part of Gantz to conceal from plaintiff the existence of the corporation.

■ The testimony on the issue now under consideration was highly conflicting. The trial judge, who heard the testimony, was in a bettter position to judge the credibility of the witnesses than we are with only the transcript before us. For that reason, we will defer to his finding and hold that the evidence shows the incorporation of defendant company was brought about by Gantz without the knowledge and consent of plaintiff. The trial court did not err in its finding and in its refusal to sustain defendants' plea of estoppel.

■ In paragraph five of the Court's findings and conclusions the Court found that defendants have attempted to obtain an identification in the eyes of the public with plaintiff's business operations by the use of the word "Simplified". Defendants contend that this finding is not supported by the evidence. We cannot agree with this contention. In our judgment, there is no escape from the conclusion that defendant Gantz did, by the use of the name "Simplified Tax Records, Inc.," intend to induce persons to deal with him in the belief that they were dealing with plaintiff's corporation. This intent is shown, not only by the use of a name similar to that of plaintiff, but by defendants' methods and acts both before and after the incorporation of defendant company.

■ In paragraph seven of the Court's findings and conclusions the Court found that the use of the word "Simplified" was not authorized or condoned by plaintiff. Defendants contend that this finding is not supported by the credible evidence. In support of this contention defendants point to the fact that plaintiff authorized and condoned the use of the word "Simplified" by supplying Gantz with stationery with the words "Simplified Tax Records Company" printed thereon, and in permitting Gantz to use plaintiff's name in setting up checking accounts in the St. Louis Banks. This, of course, occurred during the time Gantz acted as plaintiff's distributor. We fail to see how it can be said to be evidence authorizing and condoning the use of plaintiff's name for a corporation now engaged in business in competition with plaintiff.

■ The Court also found that defendants' use of the word "Simplified" confused the public and interfered with plaintiff's distribution of its product. Defendants contend there was not sufficient confusion shown to warrant an injunction against use of plaintiff's name. There was evidence by plaintiff's distributor Feld that he did encounter confusion on several occasions. However, in cases of unfair competition it is not necessary to show that persons have been actually deceived by the defendant's conduct and led to believe they are dealing with the plaintiff. It is sufficient to show that such deception would be likely to occur. Osborn Paper Co. v. Carrold Osborn Paper Co., 361 Mo. 357, 234 S.W.2d 614; Empire Trust Co. v. Empire Finance Corp., 226 Mo.App. 298, 41 S.W.2d 847; Lo Buono v. V. Viviano & Bros. Macaroni Mfg. Co., 197 Mo.App. 618, 198 S.W. 498; Thomas Patrick, Inc. v. KWK Inv. Co., 357 Mo. 100, 206 S.W.2d 359; Better Business Bureau, etc. v. Chappell, Mo.App., 307 S.W.2d 510; Katz Drug Co. v. Katz, 240 Mo.App. 739, 217 S.W.2d 286.

In the case at bar, we have a well-established business operating in 44 states. At

the time of the trial it had 100,000 accounts, and since its incorporation in 1937 it had sold over 300,000 tax systems. It had operated in Missouri many years prior to the incorporation of defendant company in 1954. It is an inescapable conclusion that plaintiff had built up a considerable goodwill in the area where it did business, and that the product it sold was associated with plaintiff's name. Gantz, in organizing defendant corporation, adopted a name almost identical with that of plaintiff. That confusion would result is not difficult to believe. We so find. What we have said also disposes of appellants' next point, i. e., that the Court erred in its conclusion that since plaintiff's damage could not be measured, equity would grant relief.

Defendants next contend that plaintiff failed to show that it had a proprietary right to the word "Simplified", because it had not established that the word had acquired a secondary meaning associated with plaintiff's business.

■ It is a well-settled principle that words or names which are of a descriptive character and not capable of exclusive appropriation may nevertheless, by long use in connection with the products or business of a particular person, come to be understood by the public as designating the goods or business of that particular person, and thus acquire a secondary meaning which will be protected by a court of equity. Better Business Bureau, etc. v. Chappell, Mo. App., 307 S.W.2d 510; Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861; Mary Muffet, Inc. v. Smelansky, Mo. App., 158 S.W.2d 168; 87 C.J.S. Trade-Marks Trade-Names, and Unfair Competition § 90. This property right will be recognized more readily when it embodies the distinctive part of the alleged owner's corporate name. Katz Drug Co. v. Katz, 240 Mo.App. 739, 217 S.W.2d 286.

■ In our opinion, the plaintiff in the case at bar did, in fact, establish by its evidence a clear right to be protected under the principles announced in the foregoing cases. We will not review the evidence upon which this judgment is founded. Suffice it to say, that the evidence shows that since its incorporation in 1937, plaintiff has built up, both nationwide and in the State of Missouri, an extensive business in the sale of its products under the name "Simplified Tax Records, Inc." The extent of plaintiff's business was such that an inference should be drawn that it acquired a proprietary right to the name under which it operated, although the word "Simplified" in its ordinary meaning is descriptive and not ordinarily capable of exclusive appropriation. We cannot agree with defendants' contention that the secondary meaning of the word was created in favor of defendant corporation by reason of the activities of Gantz.

In our opinion, the judgment should be affirmed. It is so ordered.

RUDDY, J., and SAM C. BLAIR, Special Judge, concur.