PAN AMERICAN REALTY CORP., a Corporation, Appellant,

v.

FOREST PARK MANOR, INC., a Corporation, Respondent.

No. 52808.

Supreme Court of Missouri, Division No. 1.

Sept. 9, 1968.

Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Hyman G. Stein, Charles Alan Seigel, St. Louis, for plaintiff-appellant.

Carroll J. Donohue, Stephen W. Skrainka, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for defendant-respondent.

STORCKMAN, Judge.

This is an action to enjoin the defendant from conducting its business under a name alleged to be a colorable imitation of one long used by the plaintiff. The petition also seeks an accounting of profits and the assessment of damages. With the consent of the parties, the court ordered a separate trial of the issue for injunctive relief. The court tried this issue without a jury and rendered judgment for the defendant which was designated by the court a final judgment for purposes of appeal. Plaintiff's motion for judgment or, in the alternative, for new trial was overruled and it appealed. The parties will be referred to as they were designated in the trial court.

In a motion to transfer to the St. Louis Court of Appeals ordered taken with the case, the defendant asserts this court lacks jurisdiction of the appeal because the amount involved, exclusive of costs, does not exceed $15,000. Art. 5, § 3, 1945 Constitution of Missouri, § 477.040, RSMo 1959, V.A.M.S. The amount in dispute is the only ground of appellate jurisdiction presented. The first part of the prayer of plaintiff's petition is for an injunction; the second for an accounting of profits realized by the defendant; and the third for $100,000 as actual damages and $300,000 as punitive damages. The defendant asserts that no value for jurisdictional purposes can be put on the claim for injunctive relief or the accounting, and that it is apparent from the record that the amount in dispute is wholly conjectural and the damages alleged are nonexistent.

The plaintiff has appealed from the judgment dismissing its petition; the judgment carried with it the dismissal of the claim for $100,000 actual damages and $300,000 punitive damages. Where a plaintiff appeals from his failure to recover, the amount stated in his petition ordinarily determines appellate jurisdiction. Charles F. Curry and Company v. Hedrick, Mo., 378 S.W.2d 522, 525[1]; Myers v. City of Palmyra, Mo., 355 S.W.2d 17, 18[1], 92 A.L.R.2d 791; Page v. Laclede Gas Light Co., Mo., 245 S.W.2d 23[1]. On the record before us, we cannot say that the plaintiff's claim for damages is merely colorable or frivolous. If this court finds that the defendant is liable, as the plaintiff contends, we must reverse and remand for a trial of the remaining issues, including damages which are alleged to be in excess of $15,000. Therefore, this court has jurisdiction; the motion to transfer is overruled.

First, a general description of the principal subjects with which we are concerned will be helpful. Forest Park is a municipal park in the City of St. Louis. It presently consists of 1293.22 acres and is reputed to be the second largest municipal park in the United States. It contains more than one-half the total park area of the City. It is bounded by Kingshighway on the east, Skinker on the west, Lindell on the north, and Oakland Avenue on the south. It was established by an act of the state legislature in 1874 at which time the land was largely covered by forest. Some areas have been preserved in their primitive condition. In it are located numerous educational and recreational facilities such as The City Art Museum, The McDonald Planetarium, The Jewel Box which is a building designed for floral exhibitions, The Jefferson Memorial Building occupied by The Missouri Historical Society, The St. Louis Zoological Gardens, The Steinberg Memorial Skating Rink, tennis courts, golf courses, baseball diamonds, handball courts and fields suitable for playing softball, hockey, cricket, football and rugby. There are lakes and lagoons for fishing and boating, picnic grounds, hiking trails, bridle paths, archery ranges and numerous statues. Visitors are attracted to the park from beyond the limits of the city and the state. During the summer season, and especially on weekends and holidays, it has been estimated

that more than 100,000 people visit the park daily. In 1904 Forest Park was the site of the Louisiana Purchase Exposition which is sometimes referred to as the St. Louis World's Fair. The Fair had exhibits from many foreign countries and was attended by visitors from all over the world. Forest Park is widely known and is considered a landmark of the City of St. Louis.

In addition to the parties to this action, other business enterprises have incorporated the words "Forest Park" in the names of their respective businesses, including a bakery, barbeque and pizza place, drug store, envelope company, florist shop, golf shop, lumber and supply company, a market, a medical building and pharmacy. For many years there was a large amusement park on Oakland Avenue named the Forest Park Highlands. A street named Forest Park Boulevard runs into the Park on the east. The Forest Park Bus Line operates on Oakland Avenue.

The plaintiff, a Missouri corporation, operates the Forest Park Hotel at 4910 West Pine, which is in the block east of Forest Park. The hotel building was erected in 1923 and acquired by the plaintiff in 1954. Its accommodations include apartments as well as hotel rooms. The apartments are sometimes leased for terms ranging from two months to one year. The lessees of apartments are generally referred to as permanent guests. The hotel also caters to guests who stay overnight or on a day-to-day basis. These generally are referred to as transients. Located in the hotel are a barber shop, a beauty shop and a drug store. The elevators are manually operated and the operators are instructed to assist the elderly and others in need of help. The hotel has installed a health club which may be used by women guests in the daytime and by the men at night.

The defendant, a Minnesota corporation, is licensed to do business in the State of Missouri as a convalescent and nursing home under Chapter 198, RCMo, 1959. The defendant constructed a building and began operations in November 1964 at 6220 Oakland across the street from Forest Park. The defendant's place of business adjoins Deaconess Hospital on the west. The nursing home and the hospital have a transfer agreement under which they organize and share services. The building occupied by the nursing home is constructed of brick and concrete and is fireproof. It is four stories in height. The first floor is devoted to administrative services and a dining room. The three floors above contain rooms and facilities for treatment of patients. The rated capacity of the nursing home is 117 beds. At the time of trial it had 101 beds of which 100 were occupied. Some of the rooms contain four beds, some two, and some are private or single-bed rooms. It employs a staff of nurses and furnishes continuous nursing service to its patients. There is a station for nurses on each floor.

The trial court was not requested to make findings of fact or conclusions of law and did not do so. In these circumstances, all fact issues upon which no specific findings were made shall be deemed found in accordance with the result reached. S.Ct. Rule 73.01(b), V.A.M.R. Some of the points presented by the plaintiff on appeal are related and overlapping but may be generally summarized as follows: Have the words Forest Park as a designation of the kind of business in which the plaintiff is engaged become the exclusive property of the plaintiff because such name has been used continuously since 1923 in connection with its business? Are the plaintiff and the defendant engaged in competitive businesses in that they are in the same general class of business? Has the defendant's use of the name Forest Park in connection with its nursing home caused actual or a reasonable likelihood of confusion with the business conducted by the plaintiff? While the testimony on these issues is voluminous and the exhibits numerous, there is little conflict in the material aspects of the evidence. To the extent necessary, it will be related further in connection with the issues presented.

Plaintiff's petition alleged that it had for a long time operated at 4910 West Pine "a place of lodging for permanent residents and transient guests under the descriptive name of, 'Forest Park Hotel', which said descriptive name has been and now is well known to the trade and public as 'The Forest Park', 'Forest Park Hotel Apartments', 'Forest Park Apartment Hotel', 'Forest Park Motor Hotel and Health Club', 'Forest Park Hotel Medical Center' and other such similar names." During the trial, counsel for the plaintiff referred to plaintiff's business as "a place of dwelling" but near the end of the case commenced to use the phrase "a place of housing" and moved the court to change all previous references accordingly. As a kind or category of business, "a place of housing" is entirely factitious and not controlling. The nature of the business the plaintiff is conducting is determined by the evidence and not by the words or phrase it chooses to characterize it. The evidence discloses that the plaintiff is and has been conducting a hotel business with rooms and apartments for transient and permanent guests. The president of the corporation, Mr. Alfred Jaffee, testified that the business of the Forest Park Hotel is that of "an apartment hotel and a hotel"; that it was not licensed by the State of Missouri as a professional nursing home and did not get into that field; and that it was not in "the medical business" or "the nursing business".

Section 315.010 of the statutes for the purpose of regulation defines a hotel as "every building or other structure, kept, used, maintained, advertised or held out to the public to be a place where sleeping accommodations are furnished for pay to transient or permanent guests, in which ten or more rooms are furnished for the accommodations of such guests, whether with or without meals". Other statutes in the chapter relate to the inspection and licensing of hotels. Somewhat similar language is used by § 315.240 in defining tourist camps and motels which are likewise subject to state regulation and licensing. Chapter 419 of the statutes entitled Inn-keepers also has provisions relating to hotels.

A convalescent or nursing home is declared by § 198.011, subd. 1, to be "a private home, institution, building, residence or other place, whether operated for profit or not, which provides, through its ownership or management, maintenance, personal care or nursing for three or more individuals not related to the operator, who by reason of illness, physical infirmities or advanced age are unable to care for themselves; or provides sheltered care to three or more individuals not related to the operator, which includes treatment or services which meet some need of the individual beyond the baisc requirements for food, shelter and laundry."

These statutes in general indicate the character and scope of the respective businesses of the hotel and the nursing home in question. The evidence tends to prove that each was operating in its proper domain.

Geographical or place names used to designate a particular area or locality are ordinarily regarded as common property and cannot be exclusively appropriated as a business trademark or trade name. 52 Am.Jur., Trademarks, Tradenames, Etc., § 66, p. 548; 87 C.J.S. Trade-marks, Etc. § 43, p. 274. There can be no doubt that the words "Forest Park" in the St. Louis area are primarily descriptive of the municipal park heretofore described. The park is a geographical area or place of a kind that its name cannot be exclusively appropriated as a trade name. The plaintiff impliedly recognizes that other businesses have the right, as they have done, to use the words "Forest Park" as part of their trade names, but continues to assert in its pleadings and evidence that its hotel is known to the trade and the public as "The Forest Park" or simply "Forest Park". This may be true when the subject is a hotel or hotels, just as such words may properly be used as a brief and convenient reference term when the subject is bakeries, florist shops, markets or some other line of business in which there is one bearing

the trade name "Forest Park". Such shorthand usage however will not have the effect of precluding other kinds of businesses from using as a trade name a term whose primary meaning is that of a well-known geographical area or place.

■ "Words or names which have a primary meaning of their own and which are not capable of exclusive appropriation as a trade-mark may nevertheless by long use in connection with the goods or business of a particular trader come to be understood by the public as designating the goods or business of that particular trader; and, although all the world may use such words in their primary sense, use in such a way as falsely to convey the secondary meaning constitutes unfair competition." 87 C.J.S. Trade-marks, Etc. § 90, p. 319. See also 87 C.J.S. Trade-marks, Etc. § 8, p. 238. This well-settled doctrine of secondary meaning is supported by Missouri decisions. See Better Business Bureau, Etc., v. Chappell, Mo.App., 307 S.W.2d 510, 515[4]; Simplified Tax Records, Inc., v. Gantz, Mo.App., 333 S.W.2d 328, 337[8]; Shrout v. Tines, Mo.App., 260 S.W.2d 782, 788[4]; Katz Drug Co. v. Katz, 240 Mo.App. 739, 217 S.W.2d 286, 289[3]; and Bagby v. Blackwell, 240 Mo. App. 574, 211 S.W.2d 69, 75[3]. We may assume for the purposes of this case that at the time the defendant started its nursing home business in 1964 the words Forest Park as applied to the hotel business had acquired a secondary meaning in which the plaintiff had a protectible interest by reason of its long-continued use of the words as a trade name in the operation of a hotel with rooms and apartments for transient and permanent guests.

■ The standards for determining unfair competition are generally stated in 87 C.J.S. Trade-marks, Etc. § 92, p. 325, as follows: "In order to make out a case of unfair competition it is not necessary to show that any person has been actually deceived by the defendant's conduct, it being sufficient to show that such deception will be the natural and probable result of his acts, but either actual or probable deception must be shown, the true test of unfair competition being whether the defendant's acts are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates." The rule is somewhat similarly stated in Thomas Patrick, Inc., v. KWK Inv. Co., 357 Mo. 100, 206 S.W.2d 359, 360[1–3], Simplified Tax Records, Inc., v. Gantz, Mo.App., 333 S.W.2d 328, 336[7], Osborn Paper Co. v. Carrold Osborn Paper Co., 361 Mo. 357, 234 S.W.2d 614, 617[2], and Ralston Purina Co. v. Checker Food Products Co., Mo.App., 80 S.W.2d 717, 720[3].

■ More specifically as applied to this case, 87 C.J.S. Trade-marks, Etc. § 105, p. 357, states: "Geographical and place names may be used by all persons for the purpose of truthfully stating the origin of materials used or the location of a business, and, if the terms are used in such a manner that no actual or probable confusion or deception results, no one can complain, but use in such a manner as to cause unnecessary confusion constitutes unfair competition and will be enjoined." It was held in National Bank in North Kansas City v. Bank of North Kansas City, 238 Mo.App. 19, 172 S.W.2d 967, 969–970[3, 4], that, where geographical words are properly descriptive, use of such words in a business name will not be enjoined in the absence of estoppel or actual fraud or misleading of the public. The case does hold, however, that broader latitude is allowed in the similarity of names of banking institutions than in a case of an ordinary commercial enterprise.

■ Missouri decisions are in accord with the general rules stated. Both parties cite cases from other jurisdictions which are not especially helpful because of the difference in the factual situations and because a great many of them involve infringement of trademarks instead of trade

names. While the principles applicable to trademarks and trade names are basically the same, "there is a difference more or less definitely recognized in that a trademark is applicable to the vendible commodity to which it is affixed and a trade-name to a business and its good will." 87 C.J.S. Trade-marks, Etc. § 18, p. 253. In the case at bar we are not concerned with a vendible commodity but with accommodations and services. When a person is shopping for a product or commodity, the customer's opportunity for inspection and comparison is often limited and sometimes hurried. When the purchase of a commodity has been completed, the buyer may have little or no recourse. The opportunity and likelihood of confusion and deception is generally greater with respect to a commodity than in the case of accommodations and services of the kind here involved. The primary concerns of hotel guests and nursing home patients are different; if by mistake one gets into the wrong place, the opportunity for discovery and correction is more readily available.

The plaintiff contends that "both Plaintiff and Defendant provide housing for the elderly at their respective places of housing and that both Plaintiff and Defendant cater to elderly persons whether or not such persons are in ill health." The plaintiff asserts that the trial court erred in not holding that the parties were engaged in competitive businesses although it further asserts such holding is not necessary for the court to grant the relief sought.

It would serve no useful purpose to recite the maze of evidence introduced by the parties relating to their respective physical properties, the services rendered, the manner·in which the businesses were advertised and conducted. It is sufficient to say that the evidence tended to show that the plaintiff was engaged in the operation of a hotel with both rooms and apartments available for guests. The defendant, on the other hand, was operating a convalescent and nursing home in the form and manner provided by law. In Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861, 862, the primary meaning of the trade name involved was publici juris, of public right or open to all, as in this case, but the plaintiff had established a secondary meaning as it pertained to the furniture business. The opinion states that the exclusive right to the use of the name was strictly limited to the secondary meaning of the words. Thus, the secondary meaning in which the plaintiff in this case has a protectible interest is limited to the proper realm of a hotel business.

The plaintiff relies upon Thomas Patrick, Inc., v. KWK Inv. Co., 357 Mo. 100, 206 S.W.2d 359, and similar cases in which the meaning given the trade name or trademark was unique and of a primary nature. The plaintiff, Thomas Patrick, Inc., operated a radio broadcasting station in St. Louis under the call letters KWK and the station was so known. The defendants, having no connection with the radio station, organized a corporation to engage in the general real estate business and to operate hotel and apartment properties under the name "KWK Investment Company". The opinion holds that the plaintiff had a protectible interest in the call letters assigned to it. The plaintiff had the right to protect itself from the impression its customers and the public might get that it had extended its operations into other fields and also to protect the public from being confused and deceived. Its right to the KWK trademark or trade name was primary and exclusive and not of secondary origin.

The plaintiff contends that it has become widely known in the community as a hotel that furnishes special services and facilities for elderly persons and that three-fourths of its hotel guests are permanent residents, all forty years of age or over. At the time of the trial, according to plaintiff's exhibit D, this group consisted of 95 persons ranging in age from 40 to to 90. There are 45 over 70 years of whom eleven had their own practical or registered nurse. It is understandable that elderly

persons who can afford hotel living and a private nurse and need nothing else would prefer to live in the pleasing atmosphere of plaintiff's topflight hotel. This evidence, however, does not tend to prove that the defendant is using methods that are deceptive or confusing or that it is engaged in unfair competition.

The plaintiff at one time contended that two of its guests, a Mr. Rixmann and a Mr. Silverstein, had left the Forest Park Hotel and had gone to the defendant's nursing home. It developed, however, that both of these persons had gone from the hotel to hospitals for operations, had convalesced for awhile at the nursing home, and then returned to plaintiff's hotel. These incidents tend to emphasize the difference in the functions of the hotel and the nursing home. There is no showing that any person became a patient at the nursing home under the mistaken notion that he was a guest in the plaintiff's hotel. Mr. Jaffee, plaintiff's president, testified that the Forest Park Hotel had averaged 98 percent occupancy for 18 years prior to February 1966 and thereafter to the time of trial. The charges of the hotel and nursing home are hardly competitive. For its leased accommodations, the plaintiff's rates are from $135 to $300 per month. The defendant's charges are $275 for each of four in a room, two in a room $375 to $380 each, and for private rooms the cost is from $450 to $550. The rate charged includes nursing and all other services. No rooms are rented without these services.

■ The evidence shows that both parties have a large number of persons referred to them by doctors and hospitals. We must assume that doctors and hospital employees make their recommendations with full knowledge of the services available at each place and which is best suited to the needs of the person referred. It may be that certain elderly persons who have no particular illness could be accommodated at either place although the evidence did not demonstrate that the defendant could or would attract to it persons

who were guests of the plaintiff hotel. Nevertheless, in this sense, the hotel and the nursing home could be in competition, but not unfair competition as condemned by law. "The purpose of relief against unfair competition is not to favor monopoly or to prevent competition, but to prevent deceit and fraud; it is unfair competition or unfair trade which is prohibited, and fair competition should not be stifled or prevented." 87 C.J.S. Trade-Marks, Etc. § 16, p. 250.

Furthermore, the evidence does not prove that there is a likelihood of deceit or undue confusion as the result of the defendant's operation of the nursing home under the Forest Park trade name. There was evidence that a number of businesses, such as hotels, apartments and subdivisions have incorporated the word "manor" as part of their trade names. The plaintiff's vital objection, however, is to the use of the words "Forest Park" in the defendant's trade name; it contends that nothing short of the elimination of those words from defendant's trade name will avoid the deception and confusion that is likely to occur.

The plaintiff introduced evidence tending to show that approximately two dozen telephone calls had been received at plaintiff's hotel intended for the defendant; that approximately eighteen letters received at the hotel were intended for the nursing home, and that approximately one-half dozen packages intended for the defendant had been delivered to the plaintiff's hotel. This happened during a period of approximately two years after the nursing home began operations. We consider this minimal in view of the evidence as to the amount of other misdirected mail received by the hotel and the common experience of mail and telephone patrons.

We see no possibility of a person seeking the accommodations and services of one of the parties and of his being deceived or confused into becoming a patient or guest of the other. The businesses are not in close proximity to each other. The defend-

ant's place of business is eleven blocks south and thirteen blocks east of plaintiff's hotel. The defendant uses the name Forest Park Manor—Convalescent and Geriatric Care in its newspaper advertising and on its stationery as well as on a sign prominently displayed on the front of its building. Anyone entering the defendant's building would be confronted with a hospital-like appearance and atmosphere. Above the canopy protecting the front door of plaintiff's building is a large sign proclaiming that it is the Forest Park Hotel. On the canvas drapery below the canopy are the words The Forest Park. Near the front entrance is a sign indicating the location and entrance of the Parker House Coffee Shop. Also nearby is a sign indicating that it is a AAA hotel. A uniformed attendant is at the front door and the evidence indicates that the interior spells out the fact that it is a hotel.

That the defendant's business is a convalescent and nursing home where the primary purpose is to furnish nursing care and related services is readily apparent from the appearance of its place of business. In like fashion, the fact that the plaintiff is conducting a highly-rated hotel is readily apparent from the appearance of its place of business. There is nothing in the conduct of defendant's business, the natural and probable tendency and effect of which would be to deceive the public into believing that it is the Forest Park Hotel. See Mary Muffett, Inc., v. Smelansky, Mo.App., 158 S.W.2d 168, 170[8].

The evidence showed that the defendant chose the name of the nursing home in 1961 when the site on the south side of Forest Park was selected. It had nursing homes in other cities named after parks and geographical areas. At the time the name was chosen, the defendant had not heard of the Forest Park Hotel. There is not the slightest showing of bad faith in selecting the name or in advertising its business. When the defendant's attention was called to the fact that the type on its letterhead was somewhat similar to the

plaintiff's, it immediately selected a different and distinctive type. We have examined the transcript and the exhibits and our conclusion is that the evidence is insufficient to justify granting the relief requested. Restatement of the Law, Torts, Vol. III, § 728, Comment a, and § 729; 87 C.J.S. Trade-Marks, Etc. § 92, p. 325.

We have considered all questions presented by the plaintiff and find them to be without merit. In view of the result reached, it will not be necessary to consider other defenses raised by the defendant. The trial court did not err in finding for the defendant. The judgment is affirmed.

HENLEY, P. J., and HOLT, Special Judge, concur.

SEILER, J., not sitting.