Corset & Brace Co. v. Corset Co.

THE WILLIAMSON CORSET & BRACE COMPANY, Respond-
ent, v. THE WESTERN CORSET COMPANY, Appel-
lant.

St. Louis Court of Appeals, April 20, 1897.

1. **Injunction**: CONTRACT: FRAUD: EVIDENCE. In a suit to enjoin the
execution of a contract between defendant and another corporation,
alleged to have been made for the fraudulent purpose of selling, as
and for corsets manufactured by plaintiff, corsets manufactured by
defendant, on which was a stamp very similar to and so closely re-
sembling the stamp and label used on those manufactured by plaintiff
as to be calculated to deceive the public and persons dealing in such
articles,—*Held*, that, under the evidence, plaintiff was entitled to
relief.

2. ———: ———: ———: PROOF. To entitle plaintiff to relief in such
action, it was not necessary to prove that defendant had made any
misrepresentation to any customer of plaintiff or that any such cus-
tomer had been deceived by any act of defendant; it was•sufficient
to show that defendant knowingly put it in the power of retail deal-
ers to deceive their customers.

3. **Evidence**: ADMISSIBILITY · OF RECORD IN ANOTHER SUIT. The
record of another action by plaintiff against defendant for an infringe-
ment of its patent for the corset in question, offered in evidence by
defendant, involving a different issue from that involved in the case
at bar, was immaterial, irrelevant, and properly excluded.

4. ———: ———. So were the records of two actions by plaintiff
for damages growing out of the contract here in suit, offered in evi-
dence by defendant, which were dismissed by plaintiff without trial
on the merits, and to which defendant was not a party, properly
excluded.

*Appeal from the St. Louis City Circuit Court.*—HON.
LEROY B. VALLIANT, Judge.

AFFIRMED; Judge BLAND concurring (in a separate
opinion), Judge BOND dissenting.

*Smith P. Galt* and *R. T. Stillwell* for appellant.

*J. M. Holmes* for respondent.

BIGGS, J.—For some years prior to 1882, Catherine Williamson manufactured a corset, which she claimed excelled in style and finish any other corset in the market. The corset was known to the trade as the "Williamson Corset." She obtained a patent on it. Her business increased to such an extent that in 1882 she determined to incorporate the business, and thereafter conduct it on a more extensive scale. The result was the formation of the plaintiff corporation, with its place of business in the city of St. Louis. The business was vigorously prosecuted by plaintiff, and by judicious advertising the sales eventually reached as much as $100,000 per annum. The company sold some of its goods to the trade, but the bulk of the sales were made directly to customers through soliciting agents.

In 1887, one John W. Dick was employed as manager of plaintiff's business. For some reason (which is not disclosed by the record), he quit the employment before the expiration of the year. In 1888 he organized the defendant corporation, and commenced the manufacture of the same corset in the city of St. Louis. Litigation followed between the two corporations for the infringement of the patent issued to Mrs. Williamson. The Federal courts held the patent to be void. In June, 1892, Robert C. Bennett, Edward A. King, and J. G. Williamson of the city of Chicago organized a company under the laws of the state of Illinois, for the purpose of manufacturing and selling corsets, shoulder braces, and other mechanical appliances mentioned. The capital stock was fixed at $1,000. Of this amount Bennett subscribed for $800, and the remainder was divided equally between King and Williamson. The corporation was designated in the certificate of

incorporation as the "Williamson Co.," with its place of business in the city of Chicago. Soon after the incorporation of this company, to wit, on July 16, 1892, it entered into a contract with the appellant herein for the purchase of corsets. For a stipulated price the appellant agreed to manufacture for and sell to the Williamson Company all corsets that the latter might thereafter order; that it would box them in such boxes as the Williamson Company might furnish, and would ship them either to the Williamson Company or directly to its customers. The appellant also agreed to stamp each corset with such brand as the Williamson Company should direct. In pursuance of this contract the appellant commenced and continued, until the institution of the present suit, to ship on the orders of the Williamson Company large numbers of corsets. The lids of the boxes in which the corsets were shipped and the corsets themselves contained the following stamp:

> THE WILLIAMSON COMPANY'S
> Combination
> CORSET
> Shoulder Brace.
> CHICAGO.

At the April term, 1893, the plaintiff instituted the present action to enjoin the execution of this contract. The substance of the complaint is that the Williamson Company was organized for the fraudulent purpose of selling, as and for the corsets manufactured by plaintiff, the corsets manufactured by the Western Corset Company; that the incorporator, Bennett, and the officers and stockholders of the Western Corset Company were the promoters of the scheme, and that to accomplish their

INJUNCTION: contract: fraud: evidence.

purpose they induced Williamson to lend his name to the new corporation, thereby facilitating and at the same time affording a cloak or cover for their piratical designs on plaintiff's trade; that the corsets manufactured by the Western Corset Company closely resembled those manufactured by the plaintiff, and to render the deception more complete, the lids of the boxes in which the corsets were shipped, and the corsets themselves, contained a stamp very similar to that used by plaintiff, and that thereby the public was likely to be deceived, and were deceived in the purchase of the corsets, to the great damage of plaintiff's business. Bennett, King & Williamson were made parties defendants. Having failed to get service, the plaintiff dismissed the action as to them. The answer of the Western Corset Company is a general denial. On the hearing, the issues were found for the plaintiff, and a decree was entered against the Western Corset Company perpetually enjoining it from manufacturing corsets under its contract with the Williamson Company, and from using upon any corsets manufactured and sold by it, the name "Williamson Company," and also from using labels and designs theretofore used by it in filling the orders of the Williamson Company, or any other labels or cuts imitating or designing to imitate those used by plaintiff. The Western Corset Company has appealed and claims that the findings of fact by the court are unsupported by the evidence.

The facts as found by the court are substantially these: The Williamson Company was organized for the fraudulent purpose of selling, as and for corsets manufactured by plaintiff corsets closely resembling them, and to accomplish such results fraudulent labels and letterheads resembling those used by plaintiff were used. The officers of the appellant were aware of the

fraudulent purpose for which the Williamson Company was organized. Under the contract between the appellant and the Williamson Company the former manufactured corsets closely resembling those manufactured by plaintiff; that it stamped them with a label "closely resembling that used by plaintiff," that it packed them in boxes "having the name 'Williamson' conspicuously placed thereon, and having thereon cuts and designs closely resembling those used by plaintiff, and shipped the same as directed by the Williamson Company;" that the corsets were so manufactured, stamped and shipped with the express design of palming them off for the corsets manufactured by plaintiff, and inducing purchasers thereof to believe that in purchasing the same they were purchasing corsets from plaintiff, and that the imitation of plaintiff's name and labels was so close as to be calculated to deceive the public and persons dealing in such articles.

The finding of the court that the Williamson Company was organized for the purpose stated, and that the officers of the Western Corset Company were advised of the fraud, rests upon inference only. The depositions of King and the attorney of the Williamson Company at Chicago and Dick were taken by the defendant. These depositions were read in evidence by the plaintiff. In so far as the positive or affirmative statements of these witnesses go, the Williamson Company was organized with no thought or design of defrauding the plaintiff or anyone else. The purport of the testimony of King and the attorney is that Williamson was the inventor of a corset of a peculiar make; that Bennett and King induced him to become interested in the Williamson Company with the view of manufacturing and selling his pattern of corsets; that at the time none of the parties except Bennett knew of the existence of the Western Corset Company;

that Williamson was elected president of the company, King vice-president, and Bennett general manager of the business; that Bennett was a lawyer by profession, and had desk room in the office of a real estate firm at 64 Reaper Building in the city of Chicago; that he carried on the business of the company at that office, and that soon after the organization of the company Dick visited Chicago as the representative of the Western Corset Company, when the contract here in controversy was entered into.

In making the contract the Williamson Company was represented by Bennett. Dick denied that he knew anything about the Williamson Company until after its incorporation. He asserted that he entered into the contract with the company in good faith, and with no intention of defrauding the plaintiff. He admitted that he had known Bennett for many years, and that just prior to the organization of the Williamson Company Bennett had acted as the agent of the Western Corset Company in the sale of corsets. He also admitted that he was advised by Bennett of the organization of the Williamson Company, and that within thirty or forty days after its organization he visited Chicago and entered into the contract in question. It will be thus seen that the positive statements. of these witnesses tend to disprove the plaintiff's case, and were it not for other facts and circumstances in evidence the decree would have to be set aside. Thus Dick admits that he had known Bennett from his childhood; that just prior to the organization of the Williamson Company Bennett was the agent of the Western Corset Company; that Bennett immediately notified him (Dick) of the organization of the new company, and that he thereupon visited Chicago and made the contract with Bennett. It is also conceded that the Williamson Company never manufactured

any corsets, and the small capital stock affords con-
clusive evidence that its incorporators had no such
intention. Again, the circuit court found that the
cuts and labels on the boxes and corsets closely
resembled the labels and stamps used by plaintiff, and
that the name "Williamson" was conspicuously printed
on the boxes. The record contains a facsimile of the
stamp used by the Williamson Company, but not of
that used by the plaintiff. The record, however,
shows that the plaintiff's stamp and label were offered
in evidence. It is appellant's fault that they are not
before us. In their absence the finding that they
closely resembled those used by the Williamson Com-
pany must be sustained. Finally, the defendant went
to trial without the testimony of Bennett, who knew
more about the transactions involved than anyone
else. It satisfactorily appears that the defendant
could readily have procured his deposition and that he
successfully evaded the attempts of the plaintiff to
procure it. From the foregoing facts and circum-
stances we think it may be reasonably and legitimately
inferred that Bennett organized the Williamson Com-
pany after consultation either with Dick or some
officer of Western Corset Company, and that his pur-
pose in so doing was to fraudulently take away and
interfere with the plaintiff's trade. Such an inference
affords the only explanation for taking Williamson
into the new corporation, the object being to secure
his name for the corporation, thereby making other
necessary means of deception apparently justifiable.

It is urged that there is no evidence that the
appellant made any misrepresentation to any customer
of plaintiff or that any such customer had
been deceived by anything done by appel-
lant. This is true, but there is evidence
tending to prove that the appellant knowingly put it

FRAUD: proof.

into the power of retail dealers to deceive their customers. This is sufficient to entitle the plaintiff to relief. *Lever v. Goodwin*, 36 Ch. Div. 1.

It is insisted that the court should have admitted in evidence the record in the patent suit. The issue in that case involved only the validity of the patent issued to Mrs. Williamson. No such question is involved in the present case, and hence the evidence offered was immaterial and irrelevant.

EVIDENCE: competency of record in another suit.

It seems that the plaintiff had instituted two suits in Chicago against the Williamson Company. The object of the actions was to recover damages growing out of the contract here in suit. They were not tried on their merits. The plaintiff dismissed them. The appellant offered in evidence the records of the proceedings in those cases. The court excluded them, and the appellant complains of this. The records were not competent on any theory. The appellant was not a party to the suits. They were not tried, therefore no right of plaintiff was adjudicated.

SAME.

We have read this record with a good deal of attention, and the impression is left on our minds that the trial judge probably reached the right of the case. We will therefore affirm the judgment. Judge BLAND concurs. Judge BOND dissents.

### SUPPLEMENTAL OPINION.

BLAND, P. J.—The Western Corset Company has the lawful right to manufacture and to put upon the market for sale a corset identical in its mechanical construction with the Williamson corset, or one in imitation of it, but it has no right to use upon any corset which it may manufacture, or upon any box or wrap-

pers inclosing such corsets, the brand, stamp or label in use by the Williamson Company, or any brand, stamp or label so closely resembling the same as to deceive the trade. Understanding the opinion of Judge BIGGS to be in harmony with this view, I concur in his opinion.