## ETHYL GASOLINE CORPORATION v. JAY–CRAVER, Inc., et al.

### No. 2305.

District Court, W. D. Missouri, W. D.

July 14, 1933.

William C. Michaels, of Kansas City, Mo., Edward S. Rogers, of Chicago, Ill., and Samuel D. Newkirk, of Kansas City, Mo., for plaintiff.

J. Francis O'Sullivan, of Kansas City, Mo., for defendants.

REEVES, District Judge.

This is an application for an injunction against the infringement of a trade-mark or trade-marks.

It is alleged by plaintiff that it is the owner of sundry registered trade-marks either

arising from purchase or otherwise, and that said trade-marks contain the arbitrary word "Ethyl," which it says was adopted as a distinguishing mark for a compound developed by plaintiff or its predecessors.

On August 5, 1924, it caused a registration of its said trade-mark, and thereafter registered such word in connection with other compounds seven times, the last one being August 2, 1932. It is charged in the bill that the compound thus developed by the plaintiff became popular in the operation of automobiles, both as a fuel and otherwise, and, by reason of its wide advertisement, was used extensively throughout the United States, and that the trade-mark "Ethyl" became associated and identified with plaintiff's product.

Plaintiff alleges that, after this had been achieved, the defendants began to use such words as "Ethyl Benzoil" and "Ethylizer," "Methyl Benzoil" and "Methylizer," and "ethyl-benzol," and that such words were used to describe a product distributed by them, and advertised as having the same characteristics. As a result thereof the use of such words became identified with plaintiff's product, and it is charged that same was designed for the purpose of taking an unfair advantage of and profit by plaintiff's reputation and good will.

There are allegations that the compound employed by the defendants was not the equivalent of that used by the plaintiff, but that the public was deceived by the names and the advertisements employed by the defendant.

The defendants O. H. Stevens and Curtis G. Downs have filed disclaimers of any interest in the subject-matter of the litigation, and ask to be dismissed.

The defendants, Jay-Craver, Inc., John E. Craver, and Jay N. Joerger, have filed separate answers wherein they deny that the matter in controversy involves $3,000 exclusive of interest and costs. They deny that they have been using the words alleged by the plaintiff, but state that they have used instead a device called a "methylizer" in applying their product called "methylbenzoil."

Upon the application for an injunction, affidavits were filed. These are numerous and, on behalf of plaintiff, tend to show the development of its product, beginning more than ten years ago, and the use thereof over said period. Moreover, there was evidence as to the popularity of said product and the use of the trade-names mentioned and the familiarity of the public therewith. Many affidavits tend to show that the public associated the word "ethyl" with plaintiff and its products. There was evidence also on behalf of the plaintiff to the effect that the product used by the defendants did not contain such ingredients as to entitle them to use the names appropriated. This is wholly apart from the question of unfair competition or an infringement of a trade-name. The affidavits on behalf of the plaintiff support the allegations of the bill.

Affidavits submitted by the defendants tend to show the use and purposes of a product called by the defendants "methylbenzoil," and applied in operating automobiles by the installation of a device named by them "methylizer."

Affidavits of each of the parties challenge the good qualities of the product of the other.

The defendants developed their product and device during the year 1932, and there was an affidavit tending to show that the defendants expected the plaintiff to challenge their right to employ the names adopted.

1. Judge Atwell of the Northern District of Texas, in Ethyl Gasoline Corporation v. Klibanow (D. C.) 1 F. Supp. 584, had before him a similar question. In that case the defendant was doing business under the name and style of "Ethyl Laboratories." The court held that, because of the registrations and use of the word by plaintiff, this gave it absolute ownership, and that the defendant was without right to appropriate and use said word. Judge Atwell went further, and indicated that, wholly apart from the registration, "the name 'Ethyl,' and the phrase 'Ethyl Gasoline Corporation,' have acquired and now possess a distinct and identifying significance and refer to the complainant's products and motor fuels, with which complainant's antiknock compound is mixed, and to complainant's business generally."

■ The office of the trade-mark is to indicate that goods of the same general class to which it is attached emanate from a single source. Standard Oil Company v. California Peach & Fig Growers (D. C.) 28 F.(2d) 283, loc. cit. 285.

■ It is clearly within the right of any person thus to mark and identify his goods, and no person has a right to interfere with or impinge upon the identifying mark of such proprietor with the object of interfering with his trade. There is no question in this case but that the products involved are all of the same general class.

■ 2. The defendants have earnestly urged that the plaintiff acquired no rights under its

trade-marks for the reason that same were descriptive of an article of trade. If such were the fact, defendants would be right under the authority of Warner & Co. v. Eli Lilly & Co., 265 U. S. 526, loc. cit. 528, 44 S. Ct. 615, 68 L. Ed. 1161, and a multitude of other authorities. See, also, Hygrade Food Products Corporation v. H. D. Lee Mercantile Co. (C. C. A.) 46 F.(2d) 771. However, in this case the identifying marks adopted by the plaintiff are almost entirely arbitrary. It may be true that a chemical substance known as "ethyl" is introduced by plaintiff into its compound, but the proportion thereof is very small, and is by no means descriptive of the product used by the parties.

3. Although the defendants say that the words employed by the plaintiff cannot be appropriated as trade-marks, yet the defendants in their advertising matter employed the words used by them to designate their product, and claimed same as a trade-mark. In the use of the words "Methylizer" and "Methylbenzoil," the defendants in their literature employed bold letters for "ETHYL-IZER" and "ETHYLBENZOIL" and in the background of the entire words the letter "M" in dim outline was used.

It is difficult to escape the conviction that this trade-mark was used to imitate the trade-mark of the plaintiff, and to deceive the public. Moreover, the words "Ethyl-Benzol" and similar words were freely used in its literature.

■ The rule is that: "By the prior lawful entry into a field under a legally adopted name, and by prior appropriation and use thereof, a corporation acquires a right to such name which the law will recognize and protect." Standard Oil Co. of New Mexico v. Standard Oil Co. of Cal. (C. C. A.) 56 F.(2d) 973, loc. cit. 977.

This law applies with equal force to trade-marks. The object of the law is to prevent one person from passing off his goods or his business as the goods or business of another. American Steel Foundries v. Robertson, 269 U. S. 372, loc. cit. 380, 381, 46 S. Ct. 160, 70 L. Ed. 317.

As well stated in the Standard Oil Co. Case, supra: "A corporate name or trade name identifies a corporation; it also identifies its business and the goods or services which it sells or renders. If a junior corporation appropriates such name or a name so similar thereto as to lead to confusion, it appropriates the reputation that goes with it and removes that reputation beyond the power of the owner to protect."

In Williamson Candy Co. v. Ucanco Candy Co., 3 F.(2d) 156, the District Court of Delaware held that the trade-mark "Oh Henry" was infringed by the use of the word or words, "Oh Johnnie."

In Grand Rapids Furniture Company v. Grand Rapids Furniture Shops, 221 Mich. 548, 191 N. W. 939, it was held that the defendant should be enjoined because the name led to confusion and deception.

Use of the names appropriated by the defendants is calculated to deceive the public, and, according to the affidavits, they accomplished that purpose.

It is claimed by the defendants in their answer that they have put on the market a very small quantity of their product. They should be required to desist from endeavoring to sell any more under the names adopted by them.

4. The amount in controversy is alleged to be more than $3,000. This is easily ascertainable from the pleadings, and of course involves the entire business of plaintiff, which apparently runs into far more than the requisite amount.

Accordingly, the injunction will be granted in accordance with the application of the plaintiff, and counsel for plaintiff will prepare an appropriate decree.