KATZ DRUG COMPANY, A CORPORATION, RESPONDENT, v. JERRY KATZ, APPELLANT.—217 S. W. 2d 286.

Kansas City Court of Appeals. Opinion delivered January 10, 1949.

*Jacob L. Lorie* and *Joseph H. Glass* for appellant.

*Paul R. Stinson, Lawrence R. Brown,* and *John K. Bestor* for respondent.

742

CAVE, P. J.—This is an injunction suit brought to restrain defendant, his agents, servants and employees from using the name "Katz" as it is now used on defendant's store windows, or using, displaying or advertising the surname "Katz" in script, and from using, advertising or displaying the surname "Katz" unless it is preceded by defendant's Christian name "Jerry" and the latter word is given equal place and prominence; or unless it is preceded by some other word, words or phrase which will distinguish it from plaintiff's corporate name or trade-name for identity, and from using any signs or advertisements simulating or imitating plaintiff's corporate name or trade-

name which will confuse or tend to confuse defendant's store or business with that of plaintiff. A trial was had and the court entered judgment restraining the defendant from doing any of the above things, from which he perfected his appeal.

The record discloses that in 1915 Isaac and Michael Katz, brothers, founded the Katz Drug Company. At that time there were but two stores, both in downtown Kansas City. From the very beginning they adopted and used the name Katz Drug Company, and the name "Katz," and their advertising, including the signs over their stores, constantly and continuously until the date of the trial, featured the word "Katz" printed in a *distinctive script* with a peculiar use of the letter "K" that is accomplished by carrying the understroke of the letter "K" forward and under the rest of the word. There has never been any change in this use. In 1921 they registered the name "Katz," written in this *distinctive script*, in the United States Patent Office, and in 1934 the trade-mark "Katz," written in the same distinctive script, was registered in the same office; and has also been registered in Iowa, Oklahoma, Kansas and Texas. Registration as a copyright was made July 15, 1945. The trade-name "Katz Drug Company" written in script, has been placed on all medicines and prescriptions sold by plaintiff for the last 25 years.

From the beginning of business operations the name "Katz," written in this distinctive *script,* has been featured in all advertisements on store fronts, newspapers, bill boards, street-cars, etc. As the business prospered plaintiff entered upon a gigantic advertising program in this trade territory, and in 1943 expended $388,000 for newspaper advertising alone in Kansas City. As its business continued to increase it established new stores until at the time of trial it had 21 such establishments, 13 of which are located in greater Kansas City, and its gross sales had increased to approximately 19 million dollars. Each store is completely departmentalized and sells many thousands of items, including household goods and kitchen utensils.

Defendant, Jerry Katz, was born in Kansas City, Kansas, the son of Aaron and Libbie Katz. His father and mother had operated a general merchandise, furnishings, and shoe store under the name of "A. Katz" for more than 40 years in that city. Their store name of "A. Katz" was always printed in *block letters.* Beginning in 1928 Jerry Katz had, at different times, operated a general merchandise store in Pattonsburg, Ridgeway, Bethany, Albany, and Gallatin, Missouri. In 1937 he moved to Kansas City and opened and operated a wholesale shoe business under the name of "Jerry Katz." All his store signs and advertising carried the name "Jerry Katz" in *block letters.* In 1939 he closed out his wholesale shoe business, and in 1942 opened a ladies ready-to-wear and shoe store at 921 Main Street under the name of "Jerry Katz Store," and on the window of this store, in block letters, was the sign "Katz Dress Shop." In 1945 he

sold this business and opened a new store at 613-15 Delaware Street, where he sold hotel and restaurant fixture equipment and supplies, which included glassware, cups and saucers, pots, pans and other small table and kitchen ware. This store was located within two or three blocks of one of plaintiff's stores. On the front of this store he had painted the signs which caused this litigation. For the first time in his business career, his store sign emphasized the name "Katz" in *distinctive script* in almost identical manner as that used by the plaintiff. Many exhibits were introduced in evidence and, from an examination of these, it appears conclusively that the letters "atz" of the name "Katz" are in the identical script as used by the plaintiff, and the letter "K" is identical, with the exception that the upper *flourish* is carried entirely across and above the letters "atz" and printed in that flourish in small· type is defendant's first name "Jerry," and the understroke of the letter "K" has printed in it in small type the words "store fixtures"; while in the same understroke in plaintiff's name is usually printed "Drug Company" or "Drug Store" or some similar matter. From all the evidence it is quite clear that defendant undertook to and did substantially copy and use plaintiff's trade-name "Katz" in the same design and script which plaintiff had used for more than 25 years, and with which defendant was thoroughly familiar.

Defendant contends that the court erred in entering judgment against him because plaintiff has not shown or established a trade-mark and there is not unfair competition;· and that the evidence is · insufficient to prove that the use by the defendant of his name "Katz" amounted to an appropriation of the words, phrases or dress of goods which have become identified by the public as designating the plaintiff's goods and products.

In presenting these questions, defendant labors under the misapprehension that trade-marks and trade-names are synonymous and seems to eliminate both from consideration on the ground that plaintiff's registered trade-mark or trade-name was not attached to any of its merchandise except prescription medicines. He fails to take into consideration the fact that the term *trade-name* is substantially broader than *trade-mark*. A trade-mark is generally described as a sign, device or mark by which the articles produced or dealt in by a particular person or organization are distinguished or distinguishable from those produced or dealt in by others, and must be affixed to the goods or articles; while a *trade-name* is descriptive of the manufacturer or dealer himself as much as his own name is, and frequently includes the name of the place where the business is located; it involves the individuality of the maker or dealer for protection in trade, and to avoid confusion in business, and to secure the advantages of a good reputation; it is more popularly applied to the good will of a business, and need not be affixed to the goods sold. In other words,

it is not regarded as a trade-mark in the strict technical sense. 52 Am. Jur., p. 507, et seq.; 63 C. J., p. 322, et seq. While in most respects the same rules of law apply to both, there are differences which we think support the judgment herein.

Infringement of a trade-mark is not the basis of this law suit. Plaintiff's petition reveals the nature and character of the suit. In paragraph 6 plaintiff charges the defendant with intentionally attempting to palm off his *store* and *business* as that of the plaintiff's, and to capitalize on plaintiff's advertising, and "* * * to injure plaintiff, its good name and good will, and unlawfully to appropriate plaintiff's trade-name and plaintiff's use thereof, * * *." The prayer of the petition asks that the defendant be restrained from using the name "Katz" or any similar name or device which will confuse or tend to confuse the defendant's *store* with that of plaintiff, or from simulating or imitating plaintiff's corporate name, copyrights, trade-mark or trade-name. So we will consider the case as one for infringement of trade-name.

Generally speaking, every person has the right honestly to conduct his own business under his own name, but he must use that name with due regard to the rights of another person or corporation having the same name. He cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of names. Lo Buono et al. v. Macaroni Mfg. Co., 197 Mo. App. 619, 627; Mary Muffet, Inc. v. Smelansky, 158 S. W. (2d) 168.

The evidence in this case is conclusive that plaintiff corporation had so emphasized and spot-lighted the name "Katz" printed in a distinctive *script* in all its advertising and business dealings to such an extent and over a long period of time that the name, printed in that *script,* had taken on a secondary meaning. When a trade-name acquires a secondary meaning, then the owner thereof has certain rights in the use of that name which the courts will protect. Bagby v. Blackwell, 211 S. W. (2d) 69; Standard Oil Co. v. Michie, 34 F. (2d) 802; R. H. Macy & Co. v. Colorado Clothing Mfg. Co., 68 F. .2d) 690; Brooks Bros. v. Brooks Clothing of California, 60 F. Supp. 442; Hat Corporation of American v. Davis Corp., 4 F. Supp. 613; The Furniture Hospital v. Dorfman, 179 Mo. App. 302.

It has also been said that the property rights in a trade-name will be recognized perhaps even more readily when, as here, it embodies the distinctive part of the owner's corporate name. And this is particularly true where resemblance is so close as to be likely to produce confusion as to such identity. American Steel Foundation v. Robertson, 269 U. S. 372; Stork Restaurant, Inc. v. Sahati, 166 F. (2d) 348; Standard Oil Co. of New Mexico v. Standard Oil Co. of

California, 56 F. (2d) 973; R. H. Macy & Co. v. Colorado Clothing Co., supra.

In the instant case defendant not only printed his sign emphasizing the name *Katz*, but, to add to the confusion or danger of confusion, he printed the name in almost the identical *script* used by plaintiff. This was not an oversight on his part because he admitted he was thoroughly familiar with the distinctive sign which had been used by the plaintiff for more than 25 years.

However, he contends that, even though there was a striking similarity in the names, nevertheless he should not be enjoined from its use in *script* because most of the merchandise he sold was not in direct competition with plaintiff. There is more to the proposition than mere competition in goods. By emphasizing the name *Katz* in substantially, and to the casual observer, the same *script* used by plaintiff, he is thereby subjecting plaintiff's trade-name, its good will and its reputation to the hazards of his methods of doing business. The public could very well be led to believe that defendant's store was being operated by the plaintiff or was a subsidiary thereof or affiliated therewith. In other words, he would be trading on plaintiff's trade-name, good will and reputation, which is improper. Mary Muffet, Inc. v. Smelansky, supra. In the recent case of Thomas Patrick, Inc. v. K. W. K. Inv. Co. et al., 206 S. W. (2d) 359, the Supreme Court discusses the question of unfair competition in the use of a trade-name and capitalizing on the good will and reputation of one who has acquired such trade-name. The court says (360):

"As a preliminary it should be noted that it is not a necessary prerequisite to relief in cases of this nature that some one, in point of fact, has been deceived * * * or that the plaintiff, in point of fact, has sustained an actual loss of business, injury to good will or damages. * * * It is no longer necessary that the parties be engaged in competitive business * * * or that an actual diversion of business be shown. * * * At least in some spheres of activity, nowadays, a plaintiff's trade name is entitled to protection against a subsequent user of the name if the designation complained of is so similar to the plaintiff's trade name that there is reasonable likelihood of confusion of source, such that prospective purchasers or clients are likely to regard the name as indicating the source identified by the name and consequently future injury to good will, reputation or business. * * * Such 'Threatened future injury is sufficient basis for relief.' "

In another recent opinion the Eighth Circuit Court of Appeals had this to say concerning the same question:

"* * * there can be unfair competition although the businesses involved are not directly competitive. Under present general law, the use of another's mark or name, even in a noncompetitive field, where the object of the user is to trade on the other's reputa-

tion and good will, or where that necessarily will be the result, may constitute unfair competition.'' Hanson v. Triangular Publications, 163 F. (2d) 74, 78.

In the R. H. Macy & Company opinion, supra, the court said (692):
''Furthermore, the word MACY, being a part of the Macy Company's corporate name, not only identifies its merchandise, but the corporation itself. Persons having business relations with the Macy Company, upon learning of the 'Macy Tailoring System of America,' might well believe that the Macy Company had established a Denver branch and was engaged in selling a one-price, low-grade line of clothing, and the business practices of the Colorado Company might reflect upon the business and corporate reputation of the Macy Company. This is an additional reason why the Macy Company was entitled to relief.''

Other cases holding to the same effect are: Stork Restaurant v. Sahati, supra; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, supra; Vogue Co. v. Thompson Hudson Co., 300 Fed. 509; Yale Elec. Corp. v. Robertson, 26 F. (2d) 972; United Drug Co. v. Obear-Nester Glass Co., 111 F. (2d) 997; Esso, Inc. v. Standard Oil Co., 98 F. (2d) 1, 5; Fox Fur Co. v. Fox Fur Co., 59 F. Supp. 12.

But defendant argues that his store and stock of merchandise are so small that he cannot be in unfair competition with the plaintiff. The extent of the competition in goods sold is not the sole yardstick for measuring the question of the infringement of a trade-name which has acquired a secondary meaning. Cases supra.

From the record in this case, we agree with the trial court in concluding that defendant printed the name *Katz* in the peculiar and distinctive script used by plaintiff for the purpose of capitalizing on the abnormally advertised trade-name of plaintiff in this community. This he had no right to do. It will be noted that the judgment does not prohibit defendant from using the name ''Katz'' in *block letters* or in any other manner which does not copy or imitate plaintiff's trade-name so closely that it would tend to confuse and mislead the public. In other words, he is not denied the right to use his own name generally, but is only prohibited from using it in such a manner as to infringe upon the trade-name of plaintiff.

Defendant also contends that the court erred in entering a decree for plaintiff because plaintiff has been wanting in good faith, in good conscience and in fair dealing. Under this assignment he assails some of the business practices of plaintiff; among other things, charging that the plaintiff was organized as a ''drug'' company to enable it to evade the law with reference to Sunday sales; and the cut-rate prices so profusely advertised and used by plaintiff. Even if such charges be true, we do not believe defendant would thereby be authorized to simulate and appropriate plaintiff's trade-name, or that it could be said that plaintiff does not come into court with clean hands.

Defendant also bitterly criticizes plaintiff for bringing this suit without a thorough investigation of the facts. The record does disclose that within a few days after defendant had printed the signs complained of, plaintiff requested him to remove them, which request was refused, and this suit followed. It is true that during the trial defendant evinced a willingness to remove the signs if his attorneys would consent, but that consent was first refused and then later given on the condition that defendant be reimbursed for all his expenses, including attorneys' fees, which offer plaintiff declined. We see no reason to deny plaintiff the relief sought merely because a reasonable adjustment of this controversy was not accomplished prior to or during the trial.

Finding no reversible error, the judgment should be affirmed. It is so ordered. All concur.