Charles H. DUTCHER, Plaintiff-Appellant,

v.

Charles Ivan HARKER and Ellaresa E. Harker, Defendants-Respondents.

No. 8272.

Springfield Court of Appeals.

Missouri.

March 27, 1964.

Walter A. Raymond, Raymond, West & Cochrane, Kansas City, Horace S. Haseltine, Lincoln, Haseltine, Keet, Forehand & Springer, Springfield, for plaintiff-appellant.

Wayne T. Walker, William A. R. Dalton Walker, Daniel, Clampett, Ritterhouse & Ellis, Springfield, for defendant-respondent.

RUARK, Presiding Judge.

This is an appeal from a judgment denying injunctive relief to both parties in an unfair competition suit. The case involves the right to use the brand name "Dutcher-Williams," the name "Dutcher" alone or in any combination, the labels of the (paint) product, including name, color, and design, advertising and displays, and, to some extent, the quality of the product. Contrary to the usual situation, the seller has sued the buyer; and the buyer has filed a counterclaim likewise praying for injunctive relief.

Plaintiff-appellant Charles Dutcher had been connected with paint business since 1933. He commenced business as a paint manufacturer at Springfield, Missouri, in 1947. This business was (in 1949) incorporated under the name "Dutcher-Williams Paint and Varnish Company." Dutcher-Williams manufactured and sold a "quality" house paint which contained sixty-seven per cent linseed oil. This was (then) marketed under a label with the words "Dutcher" in large green letters against a white background; directly underneath the word "Dutcher" was the word "Williams" also in green letters, but smaller. Below this were the words (black on white) "Quality House Paint White." To the side in small letters was the analysis, showing percentage of oil and pigment. Dutcher-Williams also manufactured cheaper or "Economy" paints under various brand names, but no inferior paints were manufactured and sold under the "Dutcher-Williams" name. No paints of *any* kind were sold under the label (in singular) "Dutcher." One of the brand names used

was that of "Harco," used on paint which was manufactured for the defendants Harker, who were also in the paint business.

On July 22, 1957, a written contract was entered into between Dutcher-Williams Paint and Varnish Company, a corporation, as seller, and defendants Harker as buyers. By this contract "Sellers have this day sold" and did transfer to buyers the entire stock of goods, wares, and merchandise, including finished products and raw materials and the company truck *"as well as the corporate name of the Seller, together with all brand names."* It was agreed that accounts receivable were not sold but would be received and remitted to seller. The agreement then concluded:

> *"In order that this contract may be fully carried out, the Seller agrees to promptly dissolve the Dutcher-Williams Paint and Varnish Company so that the Buyers may register said name as a fictitious name under which they will do business."*

This agreement was signed on behalf of the selling corporation by C. H. Dutcher (the appellant) as president and Helen Dutcher (his wife) as secretary. Actually Dutcher and his wife owned all of the stock in the corporation with the exception of one qualifying share held in the name of a son.

At trial of the case plaintiff attempted to prove a verbal agreement, contemporaneous with the written contract, that the Harkers agreed that the "Dutcher-Williams" label was to be used only until defendants could get their "Harco" label established and then was to be discontinued, unless he, Dutcher, "came back into the business." In explanation of this, plaintiff testified that previously the corporation had "agreed" with another paint company (which sells "Dutch Boy") not to use the word "Dutcher" alone in any of its brands or labels and that the name "Dutcher" was to be so used only for so long as he was associated with the business. This explanation and agreement was

rather indefinite, but the above is the best we can interpret it. The court refused to receive the parol testimony in regard to this verbal contract (if indeed it was a contract) as in violation of the parol evidence rule, but permitted it to come in as an offer of proof.

The appealing plaintiff urges the validity of such testimony as establishing a contract (1) not to use the word "Dutcher" alone and (2) to discontinue the use of the words "Dutcher-Williams" after the Harco line had been "established." *If* we understand appellant's contentions aright, they are that the evidence was admissible under sort of a mixture of theories: (a) a contract of the individuals, Dutcher with the Harkers, separate and distinct from the contract with the corporation; (b) a contract as to a collateral matter and therefore not within the parol evidence rule; and (c) ambiguity in the written contract.

Plaintiff and his wife were sole owners, stockholders, and officers of the corporation. There is no evidence that this was a forced or involuntary sale of any kind. The sale and *dissolution* of the corporation could only be made in these circumstances by the volition, instigation, active participation, and voluntary act on the part of the plaintiff and his wife. In *this* situation (the contract for dissolution and the sale of assets) the contracting party was more than their alter ego; it was they, themselves. The plaintiff had sold or given the name "Dutcher" to the corporation (to be used in association with "Williams"). It became the corporate property. Plaintiff is now estopped to deny the gift or the sale to the corporation or the sale by the corporation. A court of equity will not permit plaintiff to assert that his right hand did not agree with his left. But if we, for the sake of argument, should assume that the so-called parol agreement between Dutcher and the Harkers was an entirely separate and distinct agreement between separate individuals, then we would have to say that it was no contract, for the *only* consideration in-

volved in the so-called separate agreement had to come from the inducement of the sale by the corporation itself.

■ The parol evidence rule is substantive law. Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 26 A.L.R.2d 278; Davison v. Rodes, Mo.App., 299 S.W.2d 591; Giraldin Bros. Real Estate Co. v. Stiansen, Mo.App., 315 S.W.2d 636. It is a part of the warp and woof of the law of contracts generally. Were such not the law, no man in modern society could ever feel secure in his business affairs. Hence the rule, subject to exceptions with which we do not now concern ourselves, that where the parties to a contract put in writing that which purports to cover their entire agreement, parol evidence will not be received to change, vary, modify, or contradict its unambiguous terms. Friedman Textile Co. v. Northland Shopping Center, Inc., Mo.App., 321 S.W.2d 9, and citations at l. c. 14.

■■ A collateral agreement may not be excluded by the parol evidence rule, but that is only where it is an independent and different contract which is not inconsistent with and does not interfere with the terms of the written contract. While the collateral agreement may relate to the same subject matter, it cannot be so closely connected with the transaction as to form a part of it and so qualify or in effect destroy the written agreement. Crossan v. Noll, Mo.App., 120 S.W.2d 189; Francis & Co. v. Saleeby, Mo.App., 282 S.W.2d 167(2); Burns v. Hales, Mo.App., 360 S.W.2d 735, 736.[1] Of course if a contract is on its face incomplete or is reasonably susceptible of two or more different meanings, then parol evidence is competent to resolve the meaning. Fabick Bros. Equipment Co. v. Leroux, Mo.App., 375 S.W.2d 887, and cases cited in footnotes two and three. And in interpreting a contract, if on the face of the instrument the intention of the parties appears to be in doubt, a court may receive evidence of the situation of the parties and the surrounding circumstances in order to put itself in the position of the parties at the time the contract was made so as to look at it through their eyes. Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S.W.2d 527, and cases cited at footnote three, p. 532.

■ Returning to the contract here involved: It sold "the corporate name of the Seller, together with all brand names." More than that it provided that the seller would promptly dissolve the Dutcher-Williams Paint and Varnish Company "so that the Buyers may register said name as a fictitious name under which they will do business." As to the name "Dutcher-Williams," we think there can be no argument that plaintiff sold, and defendants bought, the right to use that name and brand. The meaning is not doubtful, and we need no construction aid to determine this. Hahn v. Forest Hills Const. Co., Mo.App., 334 S.W.2d 383. Plaintiff's attempt by parol evidence to limit that right to only "until the Harco label was established" is in derogation of the plain terms of that written contract. Furthermore, if we should hold that this substantive right could be so limited, still plaintiff's contention must fail, for the evidence lacks sufficient force to show that the "Harco" label is yet "established," although in a close case such might possibly be inferred from defendants' advertising. The trial court was correct in refusing to permit the plaintiff to water down the contract by limiting the use of "Dutcher-Williams" for an indefinite period.

The words "all brand names" of course require proof of *what were* the brand names, if such are involved. Testimony of plaintiff that the seller *never* used the word "Dutcher" alone was competent to show that such word, in the singular (and not in combination with "Williams"), was *not* a "brand name."

1. A good example of a competent collateral agreement is that in Hart v. Riedel, Mo.App., 51 S.W.2d 891.

■ Did the plaintiff "sell" the word "Dutcher"? The contract does not purport to cover that word in the singular. The general rule is that a man has the right, sometimes said to be "inherent," to use his surname in business unless he clearly and expressly gives up that right,[2] and the presumption is strongly against any such intention.[3]

At this point we find the parties in this position: The defendants acquired the right to use the name and label "Dutcher-Williams" (with other brands) in their business and advertising. A trade name and good will are so closely associated as to be almost inseparable, for they both involve the individuality, skill, and integrity of the maker of the product; and good will is a valuable property right.[4] But the name acquired was "Dutcher-Williams," not "Dutcher." It is true that the word "Williams" as used on the labels was in smaller letters than "Dutcher." Nevertheless it was a distinguishing tail which marked the "Dutcher" so as to set it apart and limit it as a distinct name. The mythical mermaid had the upper body of a beautiful maiden, but she had the tail of a fish. It could hardly be argued that the tail was unimportant as completing identity, or that the being was a woman. In this case we think the word "Williams" was a limiting part of the identity.

After plaintiff sold out he went to Kansas City where he worked for a paint company for three years. Then he went to Wichita, Kansas, and entered into a paint business— first as "C. H. Dutcher" and then as "Charles Dutcher." His label at the time this suit was brought was in freehand script "Charles Dutcher," both names of equal size in white on red background with a gold or yellow border underlining. He solicited business in the Springfield area including old customers who were then customers of the defendants. This he had a right to do, so long as no deception or other unfairness was practiced, because the sale contract did not contain any restriction against his re-entering into business.[5] Regardless of whether he had the right to do so, this probably is what threw the fat in the fire. The evidence shows that before and at the time this case was tried the signs over defendants' factory and some at other places read or were made to read "Harco-Dutcher" ("Williams" omitted). Various advertisements appeared, some of them in the Wichita newspapers. Most of these depicted a can or cans of paint upon which was shown the single name "Dutcher" below which was shown in very fine print the word "Williams." In some instances the word "Williams" was not shown at all or, if shown, was shown so small and fine as to be indistinguishable. In one large ad the top streamer above the depicted cans was simply "Dutcher Paints." The name and address of the manufacturer was not shown, only the dealer. On the same page of one issue of the Wichita Eagle and Beacon are two paint advertisements: one at $3.95 of "C. H. Dutcher" and another at $2.99 of

2. Silver Laundry & Towel Co. v. Silver, Mo.App., 195 S.W. 529; 44 A.L.R.2d Anno. 1159; Nims on Unfair Competition and Trademarks, 2d ed., § 67, p. 116, § 68, p. 118; Ralph Bros. Furniture Co. v. Ralph, 338 Pa. 360, 12 A.2d 573.

3. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 107d., p. 366; Hopkins on Trademarks, Tradenames and Unfair Competition, 3d ed., § 35, p. 74; Nims on Unfair Competition and Trade-Marks, 2d ed., § 19, p. 39; Poorman v. Julian, 22 Ill.App.2d 208, 160 N.E. 2d 169; Burns v. Navorska, 42 Ohio App. 313, 182 N.E. 282.

4. Callman, Unfair Competition and Trade-Marks, 2d ed., Vol. 1, § 2.2, p. 22; Shrout v. Tines, Mo.App., 260 S.W.2d 782; Katz Drug Co. v. Katz, 240 Mo.App. 739, 217 S.W.2d 286; Mary Muffet, Inc. v. Smelansky, Mo.App., 158 S.W.2d 168, see Simplified Tax Records, Inc. v. Gantz, Mo.App., 333 S.W.2d 328.

5. Counts v. Medley, 163 Mo.App. 546, 146 S.W. 465; Karsh v. Haiden, 120 Cal. App. 75, 260 P.2d 633; 29 Am.Jur., Good Will, § 18, p. 813; 38 C.J.S. Good Will § 12, p. 957; 82 A.L.R. Anno. 1030.

"Dutcher" with "Williams" underneath but so small as to be indistinguishable if one did not know what he was looking for. Both ads offer "quality house paint." A handbill was put out under the name of a merchant at McPherson, Kansas, advertising in bold letters "Dutcher Paints." Neither the cans nor the labels depicted purport to carry the word "Williams." There were shown various merchants' displays in and around Southwest Missouri advertising special sales of "Dutcher" house paint. Some of these displays show cans labeled simply "Dutcher" (singular). Defendants also put out color cards under the label "Harco-Dutcher" and a large *red and white* placard advertising "Harco-Dutcher." Plaintiff's Exhibit 1 was a label from a can of "Dutcher [with small] Williams" house paint, red on white with gold lining and black on white print, "Formula 77, House Paint, White." The distinctive color design is the same as that used by the plaintiff in his business. It was *not* the distinctive color design used by Dutcher-Williams when purchased by defendants. Chemical analysis of the paint showed it to contain 31.70% water. In the opinion of a paint manufacturer witness, it was an "inferior" paint and not a "quality" paint. Dutcher testified that he makes a "quality" paint under his name and a cheap paint under the name "Economy" but not under the "Dutcher" label. Plaintiff also put in evidence an order which he had received from a lumber yard in Peabody, Kansas, ordering from him a substantial amount of "Dutcher Latex OS White," "Dutcher Regular OS White," and "Dutcher Interior Latex" in various colors, all products of the defendants.

At the conclusion of plaintiff's evidence he offered in open court to agree to any limitations the court might put upon his label and then rested. The defendant offered no evidence.

The memorandum decree of the court stated, among other things: (a) that there was no evidence establishing who used the labels first or if either party in any way intentionally copied the other's label; (b)

that the evidence was "very slight" that the parties compete in the same trade territory or that there is any unfair competition in the use of the similar labels; (c) that there was no evidence that the defendants prepared, set up, or furnished any advertising displays, or that they were not the individual work of the retail merchant. For that reason he rendered judgment in favor of defendants on plaintiff's case and judgment for plaintiff on defendants' counterclaim.

Although the defendants have not appealed, we cannot in this case determine the rights of the appellant without also determining the rights of the defendants, for these rights are relative, and as one diminishes the other increases in proportion. Both have the right to their names; it is the *use* of them which makes the problem difficult.

We think the evidence establishes that the parties are in competition in the states of Missouri and Kansas and that there has been and is likely to be confusion of the public as the names have been used. We have determined that defendants had the right to use of the name "Dutcher-Williams." This would include the right to use the name in the same manner the appellant was using it when he sold—that is, with a smaller "Williams." We have determined that defendants did not acquire the right to use of the word "Dutcher" in the singular. We have also determined that plaintiff had a right to re-enter business under his own name. But the rights of both of these parties were and are subject to the fundamental law of unfair competition—that is, the use of name and labels must be limited by the principles of honesty and fair dealing. Neither of them has the right to so dress up the name, label, or advertising in imitation of the other in such manner as to make it probable that the public and buying customers will be confused or misled into mistaking the one for the other so that the products of one may be palmed off as the other's; and so in such manner pirate the other's

good will and business, either by taking business brought in by a reputation founded on skill, industry, and integrity, or by destroying that good will in foisting on it an inferior product.[6]

In considering a question involving unfair competition, a court of equity will scrutinize not only the similarity of names and labels but also the object and purpose of their selection. Mary Muffet, Inc. v. Smelansky, supra, Mo.App., 158 S.W.2d 168; Lo Buono v. Viviano & Bros. Macaroni Mfg. Co., 197 Mo.App. 618, 198 S.W. 498. In this case the evidence justifies the conclusion that defendants enlarged the name "Dutcher" and reduced or omitted the name "Williams" with the intention of simulating the name and product of the plaintiff; and the inference is that this was done for the purpose of deceiving the public. It is no defense that this form of piracy was committed by the manufacturer's dealers. If defendants willfully placed the means with their dealers' hands, they are subject to injunction. If they gave their dealers the weapon and ammunition, it will be inferred that they intended them to shoot. Williamson Corset & Brace Co. v. Western Corset Co., 70 Mo.App. 424; F. W. Fitch

Co. v. Camille, Inc., 8th Cir., 106 F.2d 635; Stewart Paint Mfg. Co. v. United Hardware Distributing Co., 8th Cir., 253 F.2d 568, 8 Cir., 259 F.2d 273.

The enjoining of defendants from the use of the singular word "Dutcher," except with its limiting appendage "Williams," apparently will not solve all the problems here involved. Use of deceptive imitations in names and labels can lie not only in similar names and the emphasis on and association of ideas,[7] it can be in the dress and makeup or the manner of writing and presenting the name [8] or even sometimes in the use of colors. Stewart Paint Mfg. Co. v. United Hardware Distributing Co., supra, 8th Cir., 253 F.2d 568, 259 F.2d 273.

In considering *who is unfairly imitating whom* in respect to labels used by these parties, it would seem that we should apply the general law applicable to trademarks and determine *who first appropriated and used* the distinctive arrangement of name, design, color, and general makeup.[9] In so far as brand and label makeup and design is concerned, the question must be determined by the course of action taken by

6. Grocers' Journal Co. v. Midland Publishing Co., 127 Mo.App. 356, 105 S.W. 310, 313; Osborn Paper Co. v. Carrold Osborn Paper Co., 361 Mo. 357, 234 S.W.2d 614; Silver Laundry & Towel Co. v. Silver, supra, Mo.App., 195 S.W. 529; Shrout v. Tines, supra, Mo.App., 260 S.W.2d 782; Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861; Ralston Purina Co. v. Checker Food Products Co., Mo.App., 80 S.W.2d 717; Better Business Bureau of Kansas City Advertising Club, Inc. v. Chappell, Mo. App., 307 S.W.2d 510; Brooks Bros. v. Brooks Clothing of Cal., S.D.Cal., 60 F.Supp. 442, 9 Cir., 158 F.2d 798; Madison v. La Sene, 44 Wash.2d 546, 268 P.2d 1006, 44 A.L.R.2d 1145, and Anno. 1156; Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co., 198 Minn. 276, 269 N.W. 633, 107 A.L.R. 1276.

7. Cook Paint & Varnish Co. v. Cook Chemical Co., W.D.Mo., 87 F.Supp. 865, 8th Cir., 185 F.2d 365; Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco

Rubber Co., C.C.A.Mass., 153 F.2d 662; Bagby v. Blackwell, 240 Mo.App. 574, 211 S.W.2d 69; Better Business Bureau of Kansas City Advertising Club, Inc. v. Chappell, supra, Mo.App., 307 S.W.2d 510.

8. Katz Drug Co. v. Katz, supra, 240 Mo. App. 739, 217 S.W.2d 286; Ralston Purina Co. v. Checker Food Products Co., supra, Mo.App., 80 S.W.2d 717; Charles J. Donnelly, Inc. v. Donnelly Bros. Inc., R.I., 191 A.2d 143; R. H. Macy & Co. v. Colorado Clothing Mfg. Co., 10th Cir., 68 F.2d 690.

9. United States v. Steffens, 100 U.S. 82, 25 L.Ed. 550; Nims on Unfair Competition and Trade-Marks, 2d ed., § 78, p. 152; Hopkins on Trademarks, Tradenames and Unfair Competition, 3d ed., § 34, p. 69; Ethyl Gasoline Corporation v. Jay-Craver, Inc., W.D.Mo., 4 F.Supp. 264 (4); Edgar-Morgan Co. v. Alfocorn Milling Co., E.D.Mo., 270 F. 344, 8th Cir., 282 F. 394.

the parties *at the time and after plaintiff went back into business* and only so far as and to the extent that such becomes an incident to a design likely to deceive and confuse the public. The fact that a green label with heavy print of certain design was used by Dutcher-Williams at the time defendants *bought* the business did not require them never to change that design and color. They are only restricted in changing it to a distinctive design and color in imitation (sufficient to mislead the public) of plaintiff's after plaintiff has appropriated such method of presenting *his* name and product to the public. The obligation of the plaintiff upon re-entering business and thereafter pursuing it was not to imitate a label and design which defendants had theretofore appropriated. There is evidence given by the plaintiff from which it may be inferred defendants were "chasing" him in color and design by change of labels;[10] however, this evidence is not so clear and distinct as to establish *what* and which design and colors were first appropriated by him and what changes were made. Moreover there is evidence of one label at one time used by the plaintiff (but probably not at the time of trial) in which the block printed name "Dutcher" with the initials "C. H." tailing off around the corner was used in such a way that, depending upon its manner of use in makeup and advertisement, it might be considered so close in imitation of defendants' printed label as to subject *plaintiff* to the accusation of poaching on the printed "DUTCHER-Williams" label. We think, however, that the use of the name "Charles Dutcher" in equal size letters in script (a label apparently now in use by plaintiff) is not such. (See cases ante.)

No inflexible rule can be laid down by which all cases of this kind will be governed. Each must stand on its own facts and circumstances. Thomas Patrick, Inc. v. KWK Inv. Co., 357 Mo. 100, 206 S.W.2d 359; Better Business Bureau of Kansas City Advertising Club, Inc. v. Chappell, supra, Mo. App., 307 S.W.2d 510(7); Madison v. La Sene, supra, 44 Wash.2d 546, 268 P.2d 1006, 44 A.L.R.2d 1145. The trial court should shape the remedy to meet the situation. Mayo Clinic v. Mayo's Drug and Cosmetic, Inc., 262 Minn. 101, 113 N.W.2d 852. In many cases decrees have been rendered to fit the specific needs of the situations there involved. These cases usually limit the use of the brand or label in certain respects (so they may be clearly distinguished) and yet leave the parties free to the limited use of basic name.[11]

Since the evidence as to first appropriation and use of design, makeup, characteristics, and color of the names and labels used is indefinite, we have no recourse except to reverse and remand the case in the hope that the parties may be able to agree upon the facts which we feel we lack; but if they do not agree, the circuit court shall hear evidence on the same and thereafter enter decree in accordance with the views which we have herein expressed.

It is so ordered.

STONE and HOGAN, JJ., concur.

10. See Cleo Syrup Corporation v. Coca-Cola Company, 8th Cir., 139 F.2d 416, 150 A.L.R. 1056.

11. Charles J. Donnelly, Inc. v. Donnelly Bros., Inc., supra, R.I., 191 A.2d 143; Horlick's Malted Milk Corp. v. Horlick, 7th Cir., 143 F.2d 32; Libby, McNeill & Libby v. Libby, D.C.Mass., 103 F.Supp. 968; Ralph Bros. Furniture Co. v. Ralph, supra, 338 Pa. 360, 12 A.2d 573; see 44 A.L.R.2d Anno. 1177.