**CONSOLIDATED FREIGHTWAYS,**
**Respondent,**

v.

**Gerald BATTON, Defendant,**

v.

**OHIO SECURITY INSURANCE**
**COMPANY, Appellant.**

**No. 46944.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 26, 1984.

John J. Harlan, Jr., Kathleen A. McQueeny, St. Louis, for appellant.

Robert W. Ehrig, St. Louis, for respondent.

STEWART, Judge.

Plaintiff is a self-insured employer. Defendant, an employee of plaintiff, was injured in a work related vehicular accident. Plaintiff paid defendant benefits under the Workers' Compensation Act. Defendant later made a compromise settlement of a damage suit arising out of the accident with the third party tortfeasor through the tortfeasor's insurance carrier. Plaintiff sued its employee to recover to the extent of benefits it had paid to him, less the statutory expenses. Employee filed a third party action against Ohio Security Insurance Company, the tortfeasor's automobile insurance carrier. Employee in his third party petition alleged that Ohio had orally agreed to pay to plaintiff any sums that might be due plaintiff from defendant by reason of plaintiff's right of subrogation. In a court tried case the trial court entered judgment in favor of plaintiff against defendant in the sum of $3433.35 and in favor of defendant and against Ohio in the same amount.

Ohio has appealed contending among other things that the court erred in admitting parol evidence to alter the terms of the written release.

Defendant has not appealed the judgment against him and has not filed a brief as a respondent in this action. Plaintiff has filed a response to Ohio's brief.

We reverse that portion of the judgment in favor of defendant and against Ohio.

No question is raised with respect to the proper third party defendant. We do not address the issue.

While in the employ of plaintiff, Batton was injured when an automobile driven by Mr. White, Ohio's insured, collided with the truck that Batton was driving. Batton and Consolidated entered into a lump sum compromise settlement under the provisions of the Workers' Compensation Act § 287.390.[1]

---

1. All statutory references herein are to Mo.Rev. Stat.1978 unless otherwise noted.

Batton then brought a common law action against White for injuries as a result of the collision. Consolidated sent letters to its employee and to his attorney notifying them of its right of subrogation under § 287.150 to the extent of compensation paid. In response Batton advised Consolidated that he would protect its interest. Consolidated did not notify Mr. White or Ohio of its right of subrogation.

Batton, who was represented by counsel, settled his claim against White through Ohio for the sum of $6,000.00. Batton and his wife executed a general release of all claims and the action was dismissed.

After the case was settled Consolidated made demand upon Batton for payment of its compensation lien. Batton ignored the demand and Consolidated filed this action against Batton seeking to recover its pro rata share of the recovery made by the defendant. Defendant filed a third party action against Ohio contending that Ohio on behalf of its insured and as part of the settlement made an oral agreement to protect defendant against any subrogation claim by plaintiff, his employer.

It is Ohio's contention that the release of all claims and the acceptance of a draft stating that it is for "Release in full for any and all claims arising out of accident on or about 11/26/78" constitutes the entire contract of the parties and that the release may not be altered by parol evidence.

■ Where an employee has received benefits under the Workers' Compensation Act and a third party is liable to the employee the employer is "subrogated to the right of the employee against the third party." Either the employee or the employer may pursue the claim against the tortfeasor. § 287.150. Should the employer prosecute the action and recover an amount in excess of the compensation paid a proportionate share of the excess must be paid to the employee. § 287.150.1.

■ When the employee pursues his claim and effects a recovery the employer is required to pay a proportionate share of the expenses of recovery and the balance of the recovery is to be divided proportionately between the employer and employee. § 287.150.3. It has been held that when a recovery is made by the employee he becomes a trustee of an express trust for the benefit of the employer to the extent of the employer's proportionate share of the recovery. *O'Hanlon Reports, Inc. v. Needles, et al.,* 360 S.W.2d 382, 386 (Mo.App. 1962).

■ In appropriating the action the employee acts in a fiduciary capacity. The defendant in this case was bound to protect plaintiff's interests. When defendant executed a release in full of all claims arising out of the accident with Mr. White and dismissed the law suit he effectively foreclosed any rights that plaintiff had against the tortfeasor.

The pivotal issue of this appeal is whether the terms of the release may be varied by parol evidence to show that Ohio acting on behalf of the tortfeasor agreed to pay plaintiff's claim against the defendant employee.

■ The general rule with respect to releases as with all contracts, is that parol evidence may not be used to change the terms of a written contract in the absence of fraud or mistake. One of the exceptions relied upon by plaintiff to support the trial court is that parol evidence is admissible to prove a prior or collateral agreement which is separate and distinct from that contained in the writing itself. It relies upon such cases as *Dutcher v. Harker,* 377 S.W.2d 140 (Mo.App.1964). The court there emphasizes the fact that such a collateral agreement must be an independent and different contract which is not inconsistent with and does not interfere with the terms of the written contract. Such an agreement may relate to the same subject matter but it may not "be so closely connected with the transaction as to form a part of it and so qualify or in effect destroy the written agreement." 377 S.W.2d at 143.

In the case before us only one cause of action existed for the recovery of damages

for injuries to defendant. The action could have been brought by plaintiff or defendant with either being the trustee for the interests of the other. Defendant undertook to prosecute the action and acknowledged his obligation to make recovery for plaintiff's compensation lien. Suit was filed and a settlement was reached; the action was dismissed, defendant signed a release and accepted the consideration.

■ The release is in full for all injuries and damages suffered by defendant and his wife. It is clear, unambiguous and complete. There is nothing to indicate otherwise. The language of the release "arrests any conjecture as to the interest of the parties concerning the effect of the release because the intent is adduced without question by the words employed." *Cohen v. Ozark Airlines, Inc.*, 623 S.W.2d 84, 86 (Mo.App.1981). The subject matter of the alleged parol agreement is the same as that of the release, and it would have the effect of modifying that document. The parol evidence was not admissible. The legal effect of the release cannot be varied by parol evidence. *Lugena v. Hanna*, 420 S.W.2d 335, 340–341 (Mo.1967); see also *Hubbard v. United States Fidelity and Guaranty Co.*, 430 S.W.2d 607 (Mo.App. 1968). Absent the parol evidence, Batton's action against Ohio fails.

Shortly before this case was submitted plaintiff filed its supplemental brief in which it argues that this case is controlled by our recent case of *Adriatic Insurance Company Inc. v. Brewer*, 657 S.W.2d 692 (Mo.App.1983). He reads this case to mean that, "[a]ny question, regarding the scope and extent of a release is to be determined according to what may fairly be said to have been within the contemplation of the parties at the time the release was given, which, in turn, is to be resolved in the light of all surrounding facts and circumstances under which the parties acted." In his argument plaintiff states that the proofs of loss and releases in that case were signed after plaintiff had received one half of his claim under a theft policy.

At the risk of an overly long opinion we believe that an extended discussion of *Adriatic* is necessary. In doing so we have taken judicial notice of our own file in that case. *Grassmuck v. Autorama Auto Equipment*, 659 S.W.2d 264, 266 (Mo.App. 1983).

The facts stated on page 693 of the *Adriatic* opinion are consistent with the record in that case. Adriatic had issued a policy of insurance that included theft coverage to Brewer covering a tractor and a trailer. The policy contained a provision that if the insured had "valid and collectible insurance" with another company Adriatic would only be liable for a calculable proportionate share of any loss. Brewer had received a policy from another company which he had not ordered and which was later determined to be invalid and uncollectible.

On October 10, 1978, Brewer's tractor and trailer were stolen. He advised Adriatic of the loss and told them about the unsolicited policy. On December 28, 1978 and January 8, 1979, Brewer executed separate proofs of loss for the tractor and the trailer containing a full release and a separate release "With Authorization to Pay." Counsel, thereafter retained by Brewer, wrote to Adriatic on February 8, 1979, advising Adriatic that he understood that the second policy was invalidly issued and that acceptance of partial payment from Adriatic was not a waiver of the right to later make claim for the total loss. At the time the letter was written drafts for 50% of the amount of Brewer's loss, which contained a release in full above the line for endorsement, were in transit to Brewer.

On February 28, Adriatic's representative acknowledged the letter of February 8, from Brewer's counsel and stated that they understood that a claim under the second policy would be honored.

On March 15, 1979, Brewer's counsel, by letter, returned the drafts to Adriatic pursuant to a telephone conversation and stated that the drafts could not be accepted with the full release clause and asked that the drafts be reissued without the release

clause. He also stated, "If it be determined that there was other valid coverage on the loss, your company will have discharged its liability. If no other coverage existed, then your company will be liable for the balance due thereunder."

By letter of March 29, Adriatic's representative acknowledged receipt of the letter and advised that the drafts would be reissued and sent to Brewer. The replacement drafts issued to Brewer did not contain the release clause. No proof of loss or release was subsequently executed by Brewer.[2]

Adriatic filed suit against Brewer, a group of insurance underwriters that issued a policy of insurance to Brewer and other interested parties. The first count sought a declaration that the policy issued by the defendant underwriters was valid and constituted "other insurance." The second count sought to have releases signed by Brewer be a bar to further action. In each count Adriatic pleaded that amounts paid to Brewer were decreased by 50% because of other insurance participation.

For clarification we have been more detailed in this statement of the facts in *Adriatic v. Brewer*, than we were in the statement of facts in that opinion. The misconception of plaintiff as to the meaning of that case may have been brought about by the statement in that opinion that the releases relied upon had been signed after Brewer received the drafts which did not contain a release.

The conclusion we reached in that case was that "Adriatic's course of conduct was inconsistent with its present reliance on the quoted proof of loss release language." We also noted that Adriatic's conduct "if not fraudulent is not free of misrepresentation and unfair dealing...." 657 S.W.2d at 694.

The correspondence between the parties, the actions of Adriatic in reissuing the draft at the written request of Brewer

which contained the conditions for acceptance of the draft, and the concession in its pleading that only 50% of the amount due was paid because there might be "other insurance" all show the parties in *Adriatic* had agreed that the release was conditional.

The facts in that case in no way parallel the facts of the present case. Nor does the case have the far reaching consequences attributed to it by plaintiff.

The portion of the judgment of the trial court in favor of Batton against Ohio on the third party petition is reversed. The portion of the judgment in favor of plaintiff against him was not appealed and therefore stands.

KELLY, P.J., and SNYDER, J., concur.

---

**2.** Our opinion in *Adriatic v. Brewer* would indicate that proofs of loss and releases were executed after the draft was received, contrary to

the statement of fact at the beginning of that opinion.